3 F.3d 244
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael R. MABRY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin Cornelius EDWARDS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Anthony CLEARMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
David L. EDWARDS, Defendant-Appellant.
 Nos. 92-2943, 92-2992, 92-2996 and 92-3013.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1993.
Decided Aug. 13, 1993.
Rehearing and Rehearing En Banc
Denied Sept. 22, 1993.
 
 John R. Cullom, Kansas City, MO, for defendant-appellant Mabry.
 Bruce C. Houdek, Kansas City, MO, for defendant-appellant Calvin Edwards.
 Kenneth W. Morgens, Kansas City, MO, for defendant-appellant Clearman.
 Max D. Goracke, Kansas City, MO, for defendant-appellant David L. Edwards.
 Kathryn M. Geller, Kansas City, MO, for plaintiff-appellee.
 Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Appellants Michael R. Mabry, Calvin Cornelius Edwards, Mark Anthony Clearman, and David L. Edwards were charged with conspiracy to distribute phencyclidine (PCP) in violation of 21 U.S.C. Sec. 846, and with additional drug distribution and firearm offenses. After a joint trial, Calvin Edwards was convicted of conspiracy, various substantive drug offenses, three counts of money laundering, and two counts of using a firearm in relation to a drug trafficking offense. Clearman and David Edwards were convicted of conspiracy. Mabry was acquitted of the conspiracy charge but found guilty of substantive drug offenses and of being a felon in possession of a firearm. On appeal, they argue that the district court[1] committed numerous trial and sentencing errors. We affirm.
 
 I. Michael Mabry
 
 2
 A. Mabry argues that there was insufficient evidence to convict him of being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g). In considering a claim of insufficiency, we must view the evidence at trial in the light most favorable to the jury verdict. See, e.g., United States v. Knox, 950 F.2d 516, 518 (8th Cir.1991).
 
 
 3
 The evidence showed that Calvin Edwards purchased large quantities of PCP from Clearman and others in California. The PCP was transported to Kansas City, stored at Calvin Edwards's home, and distributed from there to dealers around Kansas City. Mabry obtained PCP from Edwards and directed sales of PCP from his own home. The firearms in question, two unloaded shotguns, were seized on October 11, 1990, during execution of the first of two warrants to search Mabry's home. Police discovered the shotguns in a second floor bedroom. Although Mabry was not present during the search, he arrived shortly thereafter and admitted that the residence was his home. The second warrant was executed on November 26, 1990. No guns were recovered, but Mabry was found on the second floor of the house.
 
 
 4
 Proof of constructive possession, that is, proof that the defendant "exercised ownership, dominion or control over the firearms or dominion over the premises," will support a Sec. 922(g) conviction. United States v. DePugh, 993 F.2d 1362, 1364 (8th Cir.1993) (emphasis added). In the absence of evidence refuting the normal inference of dominion, showing that a firearm was discovered at the defendant's residence suffices to prove constructive possession. See United States v. Apker, 705 F.2d 293, 309 (8th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); United States v. Kurck, 552 F.2d 1321, 1323 (8th Cir.1977).
 
 
 5
 In this case, the shotguns were found at Mabry's home. Mabry relies on his mother's testimony that the shotguns had belonged to Mabry's deceased grandfather and were kept in a room accessible only through her locked bedroom. However, this witness's testimony was quite contradictory, and there was other evidence that she sold PCP at the home in Mabry's absence, and that he had been seen carrying a .38 revolver at the home. Viewed in its entirety, the evidence was sufficient to permit the jury to find Mabry guilty of possessing the shotguns. In addition, the fact that the shotguns were old and unloaded and that no ammunition was discovered on the premises do not preclude a Sec. 922(g) conviction. See United States v. York, 830 F.2d 885, 891 (8th Cir.1987), cert. denied, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988).
 
 
 6
 Mabry also argues that the prosecutor in her closing argument improperly stated that police found the shotguns and Mabry on the second floor during the same search. Mabry did not object to this comment at trial. The comment was at most ambiguous. It was not plain error, and it was not unduly prejudicial.
 
 
 7
 B. Mabry next argues that the district court erred in allowing a police detective to testify as an expert about user-versus-seller amounts of PCP and to opine that PCP users are sometimes sellers. These questions were highly relevant because a seller-size vial was seized at Mabry's home, yet his principal trial defense was that he was only a user of PCP, not a dealer.
 
 
 8
 The district court has broad discretion to admit expert testimony. See United States v. Sparks, 949 F.2d 1023, 1026 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992). It may allow law enforcement officers to testify as experts about drug-related activities unfamiliar to most jurors. See United States v. White, 890 F.2d 1012, 1014 (8th Cir.1989), cert. denied, 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990). In this case, we agree with the district court that most jurors would not know what size vials users and sellers of PCP typically favor, and might not know that users of PCP are many times sellers as well. The district court's decision to allow the detective, an experienced undercover narcotics buyer, to testify as an expert on these carefully limited subjects was not an abuse of its discretion.
 
 
 9
 C. In her rebuttal closing argument, the prosecutor argued: "defense counsel get up here and they attack the Government's witnesses. When they don't have evidence, ladies and gentlemen." Defendants moved for a mistrial, asserting that this statement violated their Fifth Amendment right not to testify. The district court sustained the objection, denied the mistrial, and instructed the jury to "disregard the last statement of the prosecutor." On appeal, relying on Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), Mabry, Calvin Edwards, and David Edwards argue that this Fifth Amendment violation so prejudiced their cases that they are entitled to a new trial.
 
 
 10
 A prosecutor's indirect or ambiguous comments on the evidence violate the Fifth Amendment only if they "either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily take them as a comment on the defendant's failure to testify." Knox, 950 F.2d at 520-21. Here, the prosecutor's contemporaneous explanation of her comment--that it referred to the weakness of the evidence adduced by defendants rather than their failure to testify--is as plausible as defendants' more sinister explanation. Having reviewed this comment in the context of all the closing arguments, we conclude that it did not manifest an improper intent to comment on the defendants' failure to testify, nor would the jury necessarily take it to be such a comment. Thus, although the district court quite properly sustained the defense objection, there was no Fifth Amendment violation. See Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974); United States v. Carl, 978 F.2d 450, 452-53 (8th Cir.1992). And after instructing the jury to disregard the comment, the district court did not abuse its discretion in denying the motion for a mistrial. See United States v. Figueroa, 900 F.2d 1211, 1215-16 (8th Cir.1990), cert. denied, 496 U.S. 942, 110 S.Ct. 3228 (1990).
 
 
 11
 D. Mabry and David Edwards argue that the prosecutor's closing argument included three comments on the reasonable doubt standard that impermissibly lowered the government's burden of proof. The prosecutor first commented:
 
 
 12
 [T]he government bears the burden of proof in this case. And by burden of proof, what we mean is that we must show what the evidence is so we have a chance to come back.
 
 
 13
 Mabry's objection to this comment was sustained, but his motion for mistrial was denied. Later, the prosecutor argued:
 
 
 14
 [R]easonable doubt is a doubt based upon reason and common sense and not the mere possibility of innocence. When the defendant's counsel states to you that there is a possibility that he is innocent, the law says that a reasonable doubt is not based upon the mere possibility of innocence.
 
 
 15
 It also says that proof beyond a reasonable doubt does not mean proof beyond all possible doubt. Not proof beyond all possible doubt because this is life, because that is not the way life operates, because witnesses see things differently, because you must use your common sense to analyze the evidence.
 
 
 16
 The district court overruled Mabry's objection to this comment. Finally, near the end of her argument, the prosecutor revisited this subject again:
 
 
 17
 It's a doubt based on reason. Think about what is reasonable. This is life. This is not science, this is not math. This is life. This is the way real witnesses testify, this is the way that real witnesses are. These are people who don't take notes the way that you do, that are asked to remember everything from five years.
 
 
 18
 Neither Mabry nor David Edwards objected to this comment. Nor did they object to the district court's instruction on reasonable doubt, which was taken from Eighth Circuit Model Jury Instruction No. 3.11.
 
 
 19
 Mabry argues that the prosecutor's attempt to relate the reasonable doubt standard to "real life" was confusing and improper. However, the prosecutor's last two comments were consistent with the court's instruction on the subject, an instruction we have repeatedly approved. See United States v. Harris, 974 F.2d 84, 85 (8th Cir.1992). Therefore, although we have cautioned that "prosecutors would be well advised to avoid trying to explain to the jury the meaning of 'beyond a reasonable doubt,' " United States v. Drew, 894 F.2d 965, 969 (8th Cir.), cert. denied, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990), the district court did not err.
 
 II. Calvin Edwards
 
 20
 A. Count XX of the indictment charged that Calvin Edwards used a rifle in relation to the drug trafficking conspiracy on October 20, 1989, in violation of 18 U.S.C. Sec. 924(c). Count XXV charged Edwards with using a different firearm in relation to the conspiracy on November 14, 1990. The jury convicted Edwards of both offenses. Edwards argues that the district court erred in imposing a five-year sentence on Count XX and a consecutive twenty-year sentence on Count XXV as a "second or subsequent" Sec. 924(c) conviction.[2]
 
 
 21
 It is now settled in this Circuit that the second of two Sec. 924(c) convictions from the same indictment qualifies for the twenty-year consecutive sentence. See United States v. Jones, 965 F.2d 1507, 1518 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). Relying on United States v. Freisinger, 937 F.2d 383 (8th Cir.1991), Edwards argues that Count XXV cannot be treated as a "second or subsequent conviction" because both Sec. 924(c) counts were based on the same underlying conspiracy offense. In Freisinger, defendant was convicted of possession with intent to distribute cocaine and four Sec. 924(c) counts, one for each firearm found in his car at the time of his arrest. We held that "when a defendant has been convicted of more than one violation of 924(c)(1) because he was carrying more than one firearm during a single drug trafficking offense, the convictions after the first one are not 'second or subsequent' convictions within the meaning of the statute." 937 F.2d at 391.
 
 
 22
 In United States v. Lucas, 932 F.2d 1210 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1186, 117 L.Ed.2d 429 (1992), police seized a firearm at defendant's home and another at his crack laboratory. He was convicted of drug trafficking and two Sec. 924(c) violations, one for each firearm. Though based upon the same underlying drug offense, we affirmed the separate Sec. 924(c) convictions because "each separate use of a firearm in relation to a violent crime or drug trafficking crime is punishable under section 924(c) regardless of whether other section 924(c) charges are related to the same predicate offense." 932 F.2d at 1223. In United States v. Edwards, 994 F.2d 417, 424 (8th Cir.1993), we recently extended the holding of Lucas to the issue in this case:
 
 
 23
 We agree with the district court that the use of different weapons at different times--even if for the same general criminal purposes--constitutes two separate Sec. 924(c) offenses for which consecutive sentences may be imposed under Lucas. From the standpoint of Sec. 924(c)'s purpose to deter uses of firearms, McGee's decision to restock his home after four weapons were seized in March 1990 distinguishes this case from United States v. Freisinger....
 
 
 24
 Like defendant McGee in the Edwards case, Calvin Edwards used two different firearms nearly thirteen months apart in furtherance of the same drug conspiracy. Two Sec. 924(c) convictions and consecutive sentences were therefore appropriate.
 
 
 25
 B. Edwards next contends that he is entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. Sec. 3E1.1 because the prosecutor refused to negotiate a plea agreement in a "fair and reasonable manner." This contention is without merit. A defendant has no right to a plea bargain and the prosecutor need not bargain if she prefers to go to trial. See Weatherford v. Bursey, 429 U.S. 545, 560, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). We agree with the district court that "the fact that a plea agreement was late in coming and not accepted or worked out" is no reason to award a two-point reduction for acceptance of responsibility.
 
 
 26
 The district court did not err in finding that Edwards was not entitled to the acceptance of responsibility reduction. The reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Sec. 3E1.1, comment. (n. 2). Even after being convicted, Edwards refused to accept responsibility for his crimes, telling the pre-sentence investigator that "I'm a small-time hustler, not this." His post-conviction statement that he "accept[ed] and acknowledge[d] responsibility for the conspiracy and my actions shown by the evidence" was unconvincing. Securing a reduction for acceptance of responsibility "is not simply a matter of incanting the appropriate litany of remorse." United States v. Speck, 992 F.2d 860, 862 (8th Cir.1993).
 
 
 27
 C. Count X of the indictment charged that Calvin Edwards possessed with intent to distribute more than 100 grams of PCP within 1000 feet of an elementary school in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(B) & 845a(a).[3] The evidence showed that Edwards received a controlled delivery of two bottles of PCP at a Kansas City apartment that is within 1000 feet of an elementary school. Edwards argues that he deserves a new trial because the district court instructed the jury that it must find a "transfer" within 1000 feet of an elementary school, whereas the government proved possession but no transfer. We note that the statute, 21 U.S.C. Sec. 860, requires only possession with intent to distribute within 1000 feet of a school. Moreover, evidence that Edwards received the PCP at the apartment satisfied the district court's instruction that there be a transfer. Thus, this contention is without merit.
 
 
 28
 Edwards also argues that the district court erred in failing to instruct the jury that it must find, as an element of the offense, that he possessed at least 100 grams of PCP, as set forth in the indictment. However, the statutes do not require that the government prove any particular drug quantity. Quantity matters only for purposes of sentencing. See 21 U.S.C. Sec. 841(b). As we have repeatedly held, even if alleged in the indictment, quantity is not an element of this offense. See United States v. Johnson, 944 F.2d 396, 402 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 983, 117 L.Ed.2d 146, --- U.S. ----, 112 S.Ct. 2951, 119 L.Ed.2d 574 (1992).
 
 III. Mark Clearman
 
 29
 A. Clearman argues that he was entitled to a mistrial or severance when an alleged conspirator and government witness, Robert Speed, testified that he had been threatened and "[t]hey have got some boys from California that is here to sit in the courtroom and see who is telling something." As the only defendant from California, Clearman asserts that the comment unduly prejudiced his defense. The district court denied Clearman's motion for mistrial on the ground that, far from directly implicating Clearman, Speed's comment explicitly referred to another conspirator who was not on trial and otherwise referred only vaguely to those making threats. Clearman's conclusory assertions to the contrary fail to establish that the district court abused its discretion in denying a mistrial or severance.
 
 
 30
 B. Clearman next argues that the district court erred in imposing a mandatory life sentence under 21 U.S.C. Sec. 841(b)(1) because the government did not prove two prior drug felony convictions. Focusing on his 1981 California state conviction for possession of cocaine, for which he served only a ninety-day sentence in county jail, Clearman contends that the certified California court records presented to the district court fail to demonstrate that he was convicted of a felony. We disagree.
 
 
 31
 Section 841(b) broadly defines a "felony drug offense" to include any felony drug offense under state law. See United States v. Durham, 963 F.2d 185, 187 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992). Clearman was charged with and pleaded guilty to a violation of Cal. Health & Safety Code Sec. 11350(a), which provides that violators "shall be punished by imprisonment in the state prison." Under California law, a "felony is a crime which is punishable with death or by imprisonment in the state prison." Cal.Pen.Code Sec. 17(a). Thus, the California court records establish that, whether or not Clearman negotiated a misdemeanor-level punishment by pleading guilty, he was convicted of a drug felony under California law that is a proper predicate offense under 21 U.S.C. Sec. 841(b). See United States v. Ciwensa-Salguero, 1993 WL 98813 * 3, 1993 U.S.App. LEXIS 7518 * 6-7 (9th Cir. April 2, 1993), an unpublished decision construing United States v. Robinson, 967 F.2d 287, 292-93 (9th Cir.1992).
 
 IV. David Edwards
 
 32
 A. David Edwards's twin brother Daniel was indicted and tried as an alleged member of the conspiracy, but was acquitted by the jury. David Edwards argues that the district court erred in refusing to grant him a separate trial from his twin brother. Since separate trials are not favored, we review the district court's denial of a severance only for an abuse of discretion that results in clear prejudice. See United States v. Nelson, 988 F.2d 798, 806 (8th Cir.1993). Severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, --- U.S. ----, ----, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993).
 
 
 33
 David Edwards argues that the confusion engendered by the fact that he and Daniel are nearly indistinguishable twins prevented the jury from making a reliable judgment about guilt or innocence. The mere fact that twins are jointly tried is not sufficient to render the trial unfair. See United States v. Williams, 809 F.2d 1072, 1084 (5th Cir.1987), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 187, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987). To warrant severance, a defendant must show that he suffered clear prejudice because the jury was unable to compartmentalize the evidence against each defendant. See United States v. Garrett, 961 F.2d 743, 746 (8th Cir.1992). Although both David and Daniel were charged with the same crime, and although some witnesses confused the twins, the events underlying the charges against each of them were distinct, and four government witnesses accurately identified David in the courtroom and testified to David's PCP distribution activities. And as we noted in United States v. Wagner, 884 F.2d 1090, 1100 (8th Cir.1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990), "the fact that the jurors acquitted one of the brothers demonstrates that they in fact considered the evidence against each defendant separately."
 
 
 34
 The evidence showed that Calvin Edwards employed some of his brothers, including David Edwards, to run PCP and money between dealers and the Edwards' family home. Therefore, David Edwards argues that a severance was warranted because Daniel, who testified, implicated David in an overt act:Q: Okay. Did you deliver any rent money to any drug houses?
 
 
 35
 Dan: No.
 
 
 36
 Q: Who did?
 
 
 37
 Dan: Dave.
 
 
 38
 However, Daniel denied drug dealing with any family member and did not identify by surname the person who took rent money to the drug houses. This isolated, cumulative snippet of testimony falls far short of the clear prejudice required to justify a severance. To show prejudice, the defendant must demonstrate an "appreciable chance that he would not have been convicted had separate trials been granted." United States v. Mason, 982 F.2d 325, 328 (8th Cir.1993). David has also failed to show that he and Daniel pursued antagonistic defenses; "the mere fact that ... one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials." United States v. Boyd, 610 F.2d 521, 526 (8th Cir.1979).
 
 
 39
 B. David Edwards next argues that the district court erred in imposing a two-level increase for obstruction of justice under U.S.S.G. Sec. 3C1.1 because there was no evidence that the reason given by the district court--that David and Daniel attempted to confuse people by using each other's names--significantly hindered investigation or prosecution of the conspiracy. We disagree.
 
 
 40
 The record reflects that on August 31, 1989, David Edwards led investigating officers on a high speed chase, struck a parked car, discarded substances only some of which were recovered, fought with the arresting officers when cornered, attempted to chew up his driver's license, and gave his brother Daniel's name when he was arrested. On this occasion, the false identity confused police but they were able to confirm David's real identity through post-arrest fingerprinting. On another occasion, David signed Daniel's name to a wire transfer of money to California, a deception the government did not unravel until late in the trial.
 
 
 41
 The district court has broad discretion in applying Sec. 3C1.1. See United States v. Duke, 935 F.2d 161, 162 (8th Cir.1991). Although providing a false name at arrest does not warrant an obstruction enhancement "except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense," Sec. 3C1.1, comment. (n. 4(a)) (1991), the record in this case supports the district court's finding that David Edwards engaged in a concerted--and to some extent successful--effort to obstruct justice by "playing the twin brother's name off against" his own. Moreover, although fleeing from arrest alone does not warrant the enhancement, see Sec. 3C1.1, comment. (n. 4(d)), Edwards's destruction of incriminating evidence while fleeing does. See United States v. Paige, 923 F.2d 112, 114 (8th Cir.1991). In these circumstances, the district court did not err in imposing the obstruction of justice enhancement.
 
 
 42
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The HONORABLE H. DEAN WHIPPLE, United States District Judge for the Western District of Missouri
 
 
 [2]
 18 U.S.C. Sec. 924(c) provides:
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall ... be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.... Notwithstanding any other provision of law, the term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment.
 
 
 [3]
 Pub.L. No. 101-647, Sec. 1002, 104 Stat. 4289, 4827 (1990), redesignated Sec. 845a(a) as 21 U.S.C. Sec. 860