United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-3075
_____

United States of America,           *
                                     *
          Appellee,                  *
                                     *  Appeal from the United States
     v.                              *  District Court for the
                                     *  District of North Dakota.
Gregory Lynn Balanga,                *
                                     *
          Appellant.                 *

_____

Submitted:  February 10, 1997

Filed:  April 1, 1997
_____

Before MAGILL, BEAM, and LOKEN, Circuit Judges.
_____

MAGILL, Circuit Judge.


     Gregory Lynn Balanga was convicted in the district court[1] by
a jury on two counts of being a felon in possession of a firearm
and ammunition, in violation of 18 U.S.C. § 922(g)(1) (1994).  On
appeal, Balanga argues that there was insufficient evidence to
convict him of being a felon in possession of a firearm, that the
district court abused its discretion in using an Eighth Circuit
Model Jury Instruction rather than the instruction submitted by

_____

     [1]The Honorable Patrick A. Conmy, United States District Judge
for the District of North Dakota.

Balanga, and that the district court erred in enhancing his sentence. We affirm.

## I.

Balanga lived with his girlfriend, Lori Lindstrom, in a small rental house at 311 North 19th Street in Bismarck, North Dakota. The house had a basement which could only be accessed through a root-cellar door outside of the house. The root-cellar doors led to a short staircase, at the bottom of which was a second door that opened on the basement. This second door was padlocked. The basement contained a washer and dryer, a desk used as a work bench, and a telephone.

During the summer of 1995, Balanga allegedly possessed a .25 caliber handgun and a sawed-off shotgun. On August 8, 1995, Balanga purportedly discharged one of the firearms in his yard during an argument with a woman named Kristie Sherman. On August 15, 1995, police placed Balanga in North Dakota state custody for this alleged assault. Lindstrom, Balanga's girlfriend, testified that when police took Balanga into custody she removed the .25 caliber handgun and sawed-off shotgun from Balanga's car and placed them in her own. Upon Balanga's release from custody shortly thereafter, Lindstrom testified that she gave the firearms back to him.

Sometime between October 6 and 13, 1995, Balanga's brother Dennis asked Balanga if he could store some things in Balanga's basement. Dennis received a key to the basement padlock from either Balanga or Lindstrom. Dennis then put a .22 caliber rifle (which had one round of ammunition in its clip) and a box of .38 caliber ammunition in Balanga's basement.

On October 13, 1995, police executed a search warrant on Balanga's house. The police discovered the .22 caliber rifle and .38 caliber ammunition stored in the basement of Balanga's house. When informed about the discovery of the rifle and ammunition, Balanga allegedly stated to the police that "I forgot the gun was even there. It's not my gun. It's my . . . sister-in-law's, DeAnna." Trial Tr. at 55. The police did not find either the .25 caliber handgun or the sawed-off shotgun.

Balanga was charged on a four-count indictment for being a felon in possession of three firearms (a .25 caliber pistol, a sawed-off shotgun, and a .22 bolt-action rifle) and ammunition (a single round of .22 caliber ammunition and a box of .38 caliber ammunition), in violation of 18 U.S.C. § 922(g)(1). The jury acquitted Balanga of possession of the sawed-off shotgun and was unable to reach a verdict on the count of being in possession of the .25 caliber handgun. The jury convicted Balanga of being a felon in possession of the .22 caliber rifle and the ammunition.

The district court sentenced Balanga to 188 months in prison. The court enhanced Balanga's sentence based on his three prior convictions in Colorado for second degree burglary, which the district court counted as violent felonies. Balanga now appeals his conviction and sentence.

**II.**

On appeal, Balanga argues that there was insufficient evidence to support his conviction for being in possession of the .22 caliber rifle and the ammunition found in his basement. We must affirm a jury verdict if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found the

-3-

defendant guilty of the charged conduct beyond a reasonable doubt. See United States v. Matra, 841 F.2d 837, 840 (8th Cir. 1988).

Balanga bases his insufficiency argument on his assertion that he did not possess a key to his basement door's padlock while Dennis stored a rifle and ammunition in Balanga's basement. Because he did not have a key to the basement, Balanga argues, he did not have access to the .22 caliber rifle and the ammunition and therefore did not possess them.[2] We disagree.

To convict Balanga of being a felon in possession of a firearm, the government had the burden of proving beyond a reasonable doubt that he "'exercised ownership, dominion or control over the firearms or dominion over the premises'" where the firearms were stored. United States v. Mabry, 3 F.3d 244, 247 (8th Cir. 1993) (quoting United States v. DePugh, 993 F.2d 1362, 1364 (8th Cir. 1993)) (emphasis added by Mabry). "In the absence of evidence refuting the normal inference of dominion, showing that a firearm was discovered at the defendant's residence suffices to prove constructive possession." Mabry, 3 F.3d at 247 (rejecting argument that defendant did not possess shotguns stored in his home because they were in a room accessible only through his mother's locked bedroom).

In this case the jury could have reasonably concluded that Balanga failed to refute the normal inference of dominion over his own home. While there was some testimony at trial to support Balanga's assertion that he did not have a key to his own basement

---

[2]Balanga does not challenge that he knew of the .22 caliber rifle and the ammunition that was stored in his basement. See Reply Br. at 2 n.1 (acknowledging that evidence "precludes him from effectively arguing for a reversal due to insufficient evidence of knowledge").

during the period in question, there was also evidence that Balanga in fact retained a key. See Trial Tr. at 122-23 (Lindstrom testimony).[3] When presented with such conflicting testimony, "[i]t is the jury's duty, not ours, to review the credibility of these witnesses and to weigh their testimony." United States v. Logan, 49 F.3d 352, 360 (8th Cir. 1995). Even without this conflicting testimony, the jury could have reasonably rejected as incredible the testimony that Balanga locked himself away from his own basement. See Mem. & Order, reprinted in Appellant's Add. at 3 ("The evidence regarding the key or keys was a bit incredible. The jury may well have determined that no one voluntarily locks themselves away from their washer and dryer and clean and soiled laundry for an indeterminate period.").[4]

## III.

Balanga next argues that the district court erred in relying on an Eighth Circuit Model Jury Instruction on the meaning of "possession" in the context of 18 U.S.C. § 922(g)(1) rather than

[3]At a state proceeding, Lindstrom had testified that Balanga had no key to the basement when it contained the .22 rifle, but at Balanga's federal trial Lindstrom indicated that she had lied at the state proceeding at Balanga's request. See Trial Tr. at 105-06. Lindstrom testified at trial that Balanga might have retained a key during the period in question. See id. at 122-23.

[4]Balanga has not explained why his alleged lack of a key to his basement door's padlock would have prevented him from accessing his basement. Balanga has not suggested that he could not have retrieved a key that was on loan, nor that the padlock could not have been disabled by a locksmith. Indeed, Balanga, a thrice-convicted burglar, was apparently somewhat adept at cutting padlocks off of doors himself. See Presentence Investigation Report (PSR) at ¶ 22 (explaining that Balanga's accomplice in a burglary "advised authorities Balanga would cut off the padlock securing the unit and install his own padlock. He would then return at a more convenient time to open the unit and remove the merchandise.").

accepting Balanga's proposed jury instruction.  "When reviewing a challenge to the jury instructions, we recognize that the district court has wide discretion in formulating the instructions and will affirm if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." United States v. Casas, 999 F.2d 1225, 1230 (8th Cir. 1993).

During trial, Balanga requested a jury instruction which read:

> **Possession: Key to padlock**  You have been instructed that possession means "dominion and control."  In determining whether Greg Balanga had "dominion and control" over the Mossberg .22 caliber rifle identified in Count Three and the ammunition listed in Count Four which were found in the locked basement of 311 North 19th Street, you must determine whether he had "dominion and control" over the key to the locked door.  If he did not have "dominion and control" over the key to the locked door, he cannot have had dominion and control over the Mossberg .22 caliber rifle identified in Count Three and the ammunition in Count Four.  United States v. Wright, 24 F.3d 732 (5th Cir. 1994); United States v. Eldridge, 984 F.2d 943 (8th Cir. 1993).

Reprinted in Appellant's Br. at 23.  Rejecting the requested instruction, the district court issued Eighth Circuit Model Jury Instruction Number 8.02 (1996), which provides, in part:

> A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.
>
> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Reprinted in Appellee's Br. at 20.

The district court did not abuse its discretion in rejecting Balanga's proposed jury instruction.  We have recently held that a jury instruction patterned after Model Jury Instruction Number 8.02 "accurately stated the legal definitions of the various types of possession, including constructive possession."  United States v. Smith, 104 F.3d 145, 148 (8th Cir. 1997).  By contrast, Balanga's requested jury instruction improperly assumed that Balanga's immediate possession of a key was necessary for him to have dominion over the firearm in his basement.  As our decision in Mabry makes clear, such dominion may be inferred, and possession of a key did not have to be proven.  See Mabry, 3 F.3d at 247.

## IV.

Balanga finally argues that, because the district court failed to examine the factual circumstances underlying Balanga's three previous convictions in Colorado for second degree burglary, the district court erred in enhancing Balanga's sentence pursuant to 18 U.S.C. § 924(e)(1) (1994).  Because Balanga failed to raise this argument in the district court, we review this argument only for plain error resulting in a miscarriage of justice.[5]  See United States v. Petty, 1 F.3d 695, 697 (8th Cir. 1993).

---

[5]Balanga not only failed to raise this issue in the district court, but Balanga's counsel strenuously argued against the district court addressing the factual circumstances of Balanga's previous convictions.  See Sentencing Tr. at 15 ("[Y]ou're [the district court] not supposed to get involved in a factfinding decision.  You're supposed to look at the elements of burglary."); 18 ("I think that, yes, Taylor [United States v. Taylor, 495 U.S. 575 (1990)] says look at the elements of burglary.  It says that, yes, and I say don't go on--you don't have to engage in factfinding for this, but look at the scheme in Colorado, look at how Colorado has chosen to deal with this crime, and take it from there.").  The district court accordingly declined to make any specific findings of fact regarding the circumstances of Balanga's previous convictions.

Under 18 U.S.C. § 924(e)(1), a person previously convicted of three violent felonies shall receive a minimum fifteen-year penalty upon conviction of being a felon in possession of a firearm. Under 18 U.S.C. § 924(e)(2)(B)(ii) (1994), "burglary" is specifically included as a violent felony. An "objecting defendant bears the burden of proving that a prior conviction is not a violent felony . . . as defined in § 924(e)(2)." Woodall v. United States, 72 F.3d 77, 80 n.1 (8th Cir. 1995). Because Balanga had previously been convicted on three occasions of second degree burglary of storage units in Colorado, the district court determined that § 924(e)'s fifteen-year minimum sentence applied, and sentenced Balanga accordingly.

In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court analyzed the term "burglary" as it is used in 18 U.S.C. § 924(e)(2)(B)(ii). The Court held that

> a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime,regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

Taylor, 495 U.S. at 599. Where a state's burglary statute penalizes conduct which does not fall into this generic definition, a sentencing court should examine whether, in the specific circumstances of a defendant's previous conviction for burglary, "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id. at 602.

Colorado's second degree burglary statute provides that:

A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property. . . .

Colo. Rev. Stat. § 18-4-203(1). Because this provision penalizes one who "knowingly breaks an entrance into" a building, id., and is therefore broader than the generic definition of burglary offered by the Court in Taylor, Balanga contends that the district court should have examined the facts presented in his charging papers to ensure that he had not been convicted for merely breaking an entrance into the storage units that he burglarized.[6]

Assuming that the Colorado statute is broader than generic burglary and that the district court erred in not examining Balanga's Colorado charging papers, Balanga still has the burden of demonstrating that a miscarriage of justice will occur if this hypothetical error is not corrected. See Petty, 1 F.3d at 697. In this case, a miscarriage of justice would occur only if Balanga's sentence had been enhanced for a conviction for merely breaking an entrance into--and not actually entering--the Colorado storage units.

Balanga has not presented any evidence, nor has he even alleged, that his prior convictions for second degree burglary resulted from merely breaking an entrance into the storage units in Colorado. In the Presentence Investigation Report (PSR), the

---

[6]The government conceded at oral argument that Colorado's second degree burglary statute is actually broader than generic burglary. While we question whether this is an accurate evaluation of Colorado law, see Armintrout v. People, 864 P.2d 576, 579 (Colo. 1993) ("second degree burglary require[s] the unlawful entry into a 'building or occupied structure'" (citing Colo. Rev. Stat. § 18-4-203(1))), this is not an issue that we need reach on review for plain error.

United States probation officer reported that, for each of Balanga's previous burglaries, items had been stolen from the storage units. See PSR at ¶¶ 20-22 (describing June 24, 1987 conviction for second degree burglary in Denver County District Court in Denver, Colorado), ¶¶ 23-24 (describing May 26, 1987 conviction for second degree burglary in Jefferson County District Court in Golden, Colorado), ¶¶ 24-27 (describing October 1, 1987 conviction for second degree burglary in Adams County District Court in Brighton, Colorado, and related conviction on March 25, 1987 for theft of property in Adams County Court in Brighton, Colorado). Facts recited in a PSR, although hearsay, may be relied upon by a court unless they are in dispute. Cf. United States v. Beatty, 9 F.3d 686, 690 (8th Cir. 1993); see also Woodall, 72 F.3d at 80 ("Generally, the government establishes prior violent felonies warranting a § 924(e)(1) enhancement by submitting the PSR listing defendant's prior convictions. Objections to a PSR must be made prior to the sentencing hearing, and the probation officer may then conduct a further investigation and revise the PSR. Because the PSR when challenged is not evidence, the government also has an opportunity at the sentencing hearing to introduce additional evidence regarding the disputed facts.") (quotations, citations, alterations, and note omitted).[7]

---

[7]While raising a variety of challenges to other factual statements in his PSR, see PSR Add. at 1-5, Balanga has not challenged the PSR's descriptions of his Colorado burglary convictions. See id. By failing to make an objection, Balanga deprived the prosecutor of an opportunity to submit evidence supporting the PSR's statements to the sentencing court. See Woodall v. United States, 72 F.3d 77, 80 (8th Cir. 1995) ("To establish that [the defendant's prior] burglary convictions were violent felonies under Taylor, the sentencing court needed to determine either that the applicable [state] statutes, or the indictments or jury instructions in [the defendant's] cases, revealed 'generic' burglaries. The PSR did not contain that information. If [the defendant's] counsel had timely objected on

Balanga has failed to show that any miscarriage of justice has occurred. The description of Balanga's prior convictions contained in the PSR demonstrates that he did more than merely break an entrance into storage units; rather, to obtain stolen items it was necessary for him to enter the burglarized storage units. Balanga's prior convictions for second degree burglary are therefore consistent with convictions for generic burglary under <u>Taylor</u>, and the enhancement of his sentence under 18 U.S.C. § 924(e)(1) was proper.

Accordingly, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

that ground, the probation officer or the government could have supplied the missing information prior to or at the sentencing hearing.").

While not challenging the PSR's description of his previous convictions for second degree burglary in Colorado, Balanga did file an objection to the PSR insisting that he is actually innocent of the burglary convictions. <u>See</u> Statement of Gregory Balanga (July 15, 1996) (stating that Balanga had purchased a U-Haul load of stolen items from Frank Hernandez without knowing that they were stolen and sold them at a flea market). Balanga stipulated at trial that he had, in fact, been convicted of second degree burglary three times in Colorado state courts, <u>see</u> Trial Tr. at 66, and conceded at oral argument that two of these convictions were pursuant to guilty pleas. Balanga does not suggest that his prior convictions have been overturned or in any way invalidated, and we do not construe Balanga's efforts to avoid responsibility for his past convictions as a specific challenge to the PSR's descriptions of those past convictions.

-11-