GOODWIN, District Judge,
concurring in part and dissenting in part:
I concur in the majority opinion except as to Part III.D, which affirms sentences imposed under 18 U.S.C. § 924(c) for Sei-fullah Chapman and Masoud Khan. Though I agree we should affirm Chapman’s § 924(c) sentences, I would merge Khan’s § 924(c) convictions and remand for the imposition of one sentence of 120 months for his three gun convictions.
I.
The Superseding Indictment charges sixteen separate violations of 18 U.S.C. § 924(c). J.A. 151-52. Most of the counts charge multiple defendants and include the use of different firearms in different locations on different dates. The shotgun-style Indictment simply lists the defendants involved, the approximate dates, the firearms used, and the general location for each count in less than one page. No attempt is made to provide notice to the defendants as to which counts are tied to which underlying predicate offenses. Instead, the Indictment ties the sixteen alleged § 924(c) violations to all offenses outlined in Counts 1-10, which is troubling because not all defendants charged in the gun counts are charged in each of the first ten counts. J.A. 151.
Khan received three convictions under § 924(c). For each count Khan was convicted of, the Indictment lists “Khan, Roy-er, Chapman, and Abdur-Raheem” as the defendants involved. Rather than provide exact dates, as do most of the other gun counts, the Indictment alleges Counts 24-27 occurred in “October 2001.” The location is not specific but rather lists the entire country of “Pakistan.” The only distinction made relates to the type of firearm used' — -Count 24 charges the use of an AK-47 automatic rifle; Count 25 the use of a 12mm antiaircraft gun; and Count 27 the use of a rocket-propelled grenade. In a foot-note, the district court explained the limited nature of Khan’s use of these weapons: “We accept the defendants’ evidence that the firing of these weapons was highly limited in that very little ammunition was provided.” J.A. 8195. According to the evidence, Khan fired only one bullet *502 with each weapon at some form of target. Id.
For these three convictions, Khan received mandatory consecutive sentences: 120 months for the first § 924(c) conviction, 300 months for the second, and life in prison for the third. Judge Brinkema explained that she was compelled to impose the sentences. Id. at 3308. She stated that these crimes were serious, “but there are murderers who get far less time than this, and I have sentenced Al-Qaeda members who were planning real attacks on these shores for far less time ... and I have to tell you that this is sticking in my craw.” Id.
II.
Unlike most circuits,* we allow multiple § 924(c) convictions for conduct in the same underlying offense. United States v. Camps, 32 F.3d 102, 107-08 (4th Cir.1994). By allowing convictions for multiple gun uses, even if during the same underlying conspiracy, we comply with congressional intent to harshly punish the use of guns to commit felonies, and to punish subsequent uses of guns even more harshly. See id. at 108 (citing 114 Cong. Rec. 22231 (1968)) (“We are also satisfied that this interpretation best achieves section 924(c)(1)’s unmistakable objective of ‘persuading the man who is tempted to commit a federal Felony to leave his g-un at home.’ ”). If multiple § 924(c) convictions were not permissible for the same underlying offense, no deterrent would exist for criminals using guns throughout an extended conspiracy-
Our rule’s justification is apparent from examining our decisions in United States v. Camps and United States v. Luskin, 926 F.2d 372 (4th Cir.1991). In Camps, the defendant received eight convictions under § 924(c). Camps, 32 F.3d at 105. For sentencing purposes, however, these convictions were grouped, which resulted in only three § 924(c) sentences. Id. The first sentence was imposed for the use of an AK-47 during a December 23, 1989 ambush of a rival drug boss. Id. at 103. The second sentence was imposed for a conviction for the use of an AK-47 and a conviction for the use of an Uzi during another ambush on January 7, 1990. Id. at 103-04. The third sentence was imposed for carrying five separate semi-automatic weapons that were seized from a van that the defendant was using to flee. Id. at 104.
Judge Luttig, writing for the court, explained that for that case only, the court accepted the government’s concession that multiple firearms carried at one time can result in only one § 924(c) sentence. Id. at 109 n. 9. I would apply this rule to all cases where the different firearms relate to the same objective, have the same effect on the predicate crime, and are used or carried proximately in time.
In Camps, though each grouped “use” was tied to the underlying drug conspiracy, each “use” was directed toward a different objective of the conspiracy, occurred at distinctly different times, and had different effects on the conspiracy. Criminalizing only the December 1989 use would not account for the fact that the defendant made the criminal decision to use more guns later to further other objectives of the conspiracy. Three § 924(c) sentences *503 were justified to account for the defendant’s multiple uses of firearms.
Multiple sentences under § 924(c) were also justifiable in Luskin, the case on which the majority relies. Luskin hired someone to kill his wife. On three distinct occasions, the hitman attempted the murder. Luskin, 926 F.2d at 373 (stating the first attempt was on March 9, the second attempt May 30, and the third attempt July 27). The court imposed a separate § 924(c) sentence for each attempt. Id. at 374. The attempts, each nearly two months apart, were sufficiently distinct to justify multiple sentences. Id. at 375 (explaining that before the third attempt, Luskin offered a $25,000 bonus, and stating Luskin could have called off the hired gun at any time).
With respect to Khan, however, multiple § 924(c) sentences are not justifiable.
III.
In applying Camps and Luskin, we must determine how many “uses” are represented by the acts a defendant performed with firearms. See Camps, 32 F.3d at 109 (“Because there were three separate uses and/or carryings of the weapons ....”) (emphasis added). The majority’s decision in this case fails to consider whether the underlying uses were sufficiently distinct to justify multiple sentences. Instead, the majority opines that “there is no housekeeping requirement under the statute or Luskin obliging either the government or the district court to present the facts in such a manner as to align the use of a particular firearm with a particular predicate offense.” Op. at 494. Examining whether a defendant’s conduct contains sufficiently distinct “uses” to justify multiple § 924(c) sentences is much more than a housekeeping requirement. It is necessary to ensure the defendant receives a fair sentence and is not punished separately for conduct that should be merged for sentencing purposes.
Under the majority’s reasoning, no boundaries exist for § 924(c) prosecutions. That is, a drug conspirator could pick up a gun, place it on the table to scratch his nose, pick it back up, and receive two § 924(c) sentences. An itchy nose could cost him an additional fifteen years. Likewise, a defendant could carry three dangerous weapons at one time, be convicted of three § 924(c) sentences, and receive a life sentence. Applying this statute without boundaries of reason and ordinary meaning leads to absurd results.
In determining how to draw the boundaries, courts examine a number of factors but primarily focus on the objectives, the effects, and the timing of the defendant’s conduct. See United States v. Finley, 245 F.3d 199, 206-08 (2d Cir.2001); United States v. Wilson, 160 F.3d 732, 749 (D.C.Cir.1998); United States v. Lucas, 932 F.2d 1210, 1222-23 (8th Cir.1991). Where the “uses” of a defendant have substantially the same objective, substantially similar effects on the predicate offense, and are proximate in time to one another, our justification for sustaining multiple § 924(c) sentences does not exist.
Sustaining three § 924(c) sentences for Khan’s convictions creates a result Congress surely did not intend. The evidence discloses only one objective Khan had when firing the weapons, which was to enhance his training in preparation for moving into Afghanistan. As Judge Brinkema noted, the evidence on Khan’s firing of the weapons was highly limited. J.A. 3195. No evidence exists to suggest that each so-called “use” of the weapons had any kind of different effect on the predicate conspiracy. There is no evidence to accurately determine the temporal proximity of the firings. The Indictment does not even attempt to distinguish *504 the timing of each use, but merely lists each of Khan’s uses as occurring in October 2001. J.A. 152. From the evidence, it is impossible to determine if Khan’s firings had separate objectives, different effects on the conspiracy, or occurred at times not sufficiently proximate to justify multiple sentences. Evidence does not exist in the record to conclude the firings constitute separate and distinct “uses” for sentencing purposes. Accordingly, I would merge the three § 924(c) convictions for sentencing purposes, and would remand with instructions to impose a sentence of 120 months for these convictions.

 United States v. Anderson, 59 F.3d 1323 (D.C.Cir.1995); United States v. Cappas, 29 F.3d 1187 (7th Cir.1994); United States v. Lindsay, 985 F.2d 666 (2d Cir.1993); United States v. Sims, 975 F.2d 1225 (6th Cir.1992); United States v. Moore, 958 F.2d 310 (10th Cir.1992); United States v. Hamilton, 953 F.2d 1344 (11th Cir.1992); United States v. Privette, 947 F.2d 1259 (5th Cir.1991); United States v. Fontanilla, 849 F.2d 1257 (9th Cir.1988). But see United States v. Mabry, 3 F.3d 244 (8th Cir.1993).