# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2759
_____

United States of America

*Plaintiff - Appellee*

v.

Ryan Cornelison

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: February 12, 2013
Filed: June 21, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Ryan Cornelison of being a felon in possession of firearms. The district court[1] sentenced him to 120 months imprisonment with 3 years of supervised release and assessed a $12,000 fine in accordance with 18 U.S.C. § 3571

_____

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

and United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 5E1.2. Cornelison challenges the sufficiency of the evidence, the district court's decision to admit evidence of Cornelison's prior conviction, two jury instructions, and the fine.

## I.    BACKGROUND
### A.    Facts

Starting around March of 2011, Cornelison lived in his grandfather's house on Jefferson Street in Springdale, Arkansas. Between May and August 2011, Cornelison repeatedly told his probation officer, Christina Duncan, that he lived alone in the house. On May 20, 2011, Duncan visited Cornelison at the Jefferson Street house and saw no indication anyone other than Cornelison was living there. In June 2011, a confidential informant told Detective Steven Hulsey with the Washington County, Arkansas, Sheriff's Department there were illegal items at the Jefferson Street house.

On July 13, 2011, Detective Hulsey obtained and executed a warrant to search the Jefferson Street house. Cornelison was not in the house at the time of the search. During the search, Detective Hulsey discovered one of the house's three bedrooms was locked. Detective Hulsey was able to defeat the lock in less than one minute, using only a driver's license. In the locked room, Detective Hulsey discovered six loaded firearms and a flak jacket. Detective Hulsey seized the firearms and left a receipt describing the seized items.

On August 3, 2011, officers arrested Cornelison for being a felon in possession of firearms. In an interview with Detective Hulsey, Cornelison admitted he lived at the Jefferson Street house. Detective Hulsey asked Cornelison who owned the firearms, and Cornelison said some had belonged to Cornelison's father and others had belonged to Cornelison's friend, both of whom were deceased.

**B. Procedural History**

On November 2, 2011, a grand jury indicted Cornelison for being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The case was tried before a jury. Cornelison stipulated to being a convicted felon. Over Cornelison's objection, the government produced evidence under Federal Rule of Evidence 404(b) of Cornelison's prior conviction for unlawful possession of firearms. The district court instructed the jury to consider the prior conviction evidence only with regard to Cornelison's knowledge of or intent to possess the firearms discovered in the locked bedroom.

After the government's case, Cornelison moved for a judgment of acquittal, arguing the government had not proved its case beyond a reasonable doubt. The district court denied Cornelison's motion.

Cornelison asked the district court to instruct the jury on the meaning of reasonable doubt using the "newer" version of the Eighth Circuit Model Criminal Jury Instructions (model instructions).[2] The district court rejected Cornelison's proposed instruction and instructed the jury under the version of the model instruction in effect at the time of the trial. The district court noted the given instruction was "one that ha[d] been used commonly by [this] Court over several years and [the district court] believe[d] ha[d] been approved and not found wanting or lacking by the appellate courts during that time."

Cornelison also requested a "theory of the defense" instruction. Cornelison's proposed instruction emphasized the government's burden of proof, stating "[i]t is the

---

[2]Cornelison's proposed instruction was incorporated into the 2013 amendments to the model instructions as Instruction 3.11. Cornelison contends the Eighth Circuit Judicial Committee on Model Jury Instructions had published this proposed instruction in draft form at the time of his trial, but admits the committee did not formally adopt the revised instruction until some months later.

position of [Cornelison] that the government has failed to prove beyond a reasonable doubt the essential element that the defendant knowingly possessed the firearms he is charged with possessing," and provided "it is [Cornelison's] position that the government has shown evidence merely of [Cornelison's] proximity to the firearm. Mere proximity is not enough to show constructive possession." The district court rejected Cornelison's proposed instruction.

On March 28, 2012, the jury found Cornelison guilty. The United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR noted Cornelison had an eleventh grade education and minimal technical training, and had worked in the construction field. The PSR also indicated Cornelison was disabled and unable to work because of a seizure condition; Cornelison "owed 'several thousand dollars' in medical bills and interest" on another debt; and Cornelison "ha[d] no assets which c[ould] easily be liquidated to pay a fine." The report concluded "[i]t is believed [Cornelison] can perform some type of work and is able to make payment toward a fine. If incarcerated, [Cornelison] could work and make payments toward a fine through the" prison work program, and Cornelison "should also be able to make payments during a period of supervised release." Cornelison did not object to any of these findings.

At sentencing, the district court informed Cornelison "I will direct that you pay the minimum fine that's recommended, $12,500. I will not require you to pay interest, but it is a legitimate part of the sentence and I do expect you to pay it." Cornelison again did not object.

Cornelison appeals,[3] and we affirm.

---

[3]We have appellate jurisdiction under 28 U.S.C. § 1291.

## II.    DISCUSSION

### A.    Standards of Review

This court reviews the district court's denial of a motion for judgment of acquittal de novo, construing all evidence and making all reasonable inferences in favor of the jury's verdict.  See United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009).  We review the district court's formulation of the "jury instructions for abuse of discretion and its interpretation of law de novo."  Kahle v. Leonard, 563 F.3d 736, 741 (8th Cir. 2009).  We review the district court's admission of evidence under Rule 404(b) for abuse of discretion.  See United States v. Hill, 638 F.3d 589, 592 (8th Cir. 2011).  Because Cornelison did not object at sentencing, we review the district court's imposition of a fine for plain error.  See United States v. Allmon, 500 F.3d 800, 807 (8th Cir. 2007); Fed R. Crim. P. 52(b).

### B.    Sufficiency of the Evidence

To convict Cornelison of being a felon in possession of a firearm, the government was required to prove Cornelison knowingly possessed the weapons seized from his home.  See United States v. Tindall, 455 F.3d 885, 887 (8th Cir. 2006).  Cornelison contends the district court should have entered a judgment of acquittal because the government failed to prove Cornelison knew weapons were stored in the locked bedroom.  Contrary to Cornelison's arguments, there was sufficient evidence for a reasonable jury to determine Cornelison knowingly possessed the firearms.

Cornelison's grandfather owned the Jefferson Street house, but all of the evidence, including Cornelison's own admissions to his probation officer and Detective Hulsey, indicated Cornelison was the sole occupant of the house.  Cornelison knew where the weapons had come from, claiming they belonged to his deceased father and friend.  The jury heard evidence Cornelison previously had been convicted of unlawfully possessing firearms, which supports the finding Cornelison knew of and intended to possess the firearms in this case.  See United States v.

-5-

Strong, 415 F.3d 902, 905 (8th Cir. 2005) (deciding a prior conviction for felon in possession of a firearm is relevant to prove the defendant's knowledge of and intent to possess the firearm at issue in the charged offense).

Cornelison argues his case can be distinguished from prior cases where we have upheld a conviction for felon in possession of a firearm, see, e.g., United States v. Butler, 594 F.3d 955, 964-65 (8th Cir. 2010) (affirming the jury's verdict where the firearm was discovered under the mattress in the bedroom the defendant shared with the home's primary occupant), because Cornelison asserts he did not have access to the locked bedroom at the Jefferson Street house. The government suggests our decision in United States v. Mabry, 3 F.3d 244, 247 (8th Cir. 1993), abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), is fatal to Cornelison's argument.[4] The government probably is correct. In Mabry, we recognized "[i]n the absence of evidence refuting the normal inference of dominion, showing that a firearm was discovered at the defendant's residence suffices to prove constructive possession." Id. at 247. Because "[c]onstructive possession requires knowledge of an object," United States v. Serrano-Lopez, 366 F.3d 628, 634-35 (8th Cir. 2004), Cornelison's claim that he had no knowledge of the weapons in his own residence is legally suspect in light of Mabry. Even if Mabry is not controlling in this case, the evidence taken as a whole amply supports the jury's conclusion that Cornelison knew about and had possession of the weapons. The district court did not err in denying Cornelison's motion for judgment of acquittal.

---

[4]The government's other key case, United States v. Balanga, 109 F.3d 1299 (8th Cir. 1997), is inapposite. The defendant in Balanga admitted to knowing firearms were located at his residence. Id. at 1301 & n.2. The dispute was whether the defendant had dominion over the area where the weapons were stored. Id. at 1301.

## C.    Prior Conviction

Cornelison contends the district court abused its discretion in admitting evidence of Cornelison's prior conviction for being a felon in possession of a firearm. We reject this contention.

District courts have discretion under Rule 404(b) to admit a defendant's prior conviction for being a felon in possession of a firearm, provided the evidence is "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than in prejudicial effect." Strong, 415 F.3d at 905. Cornelison concedes the second and third prongs of the Strong test are satisfied in this case; therefore, the only issues are whether the conviction was relevant to a material issue and not unduly prejudicial.

Cornelison's past conviction for possession of a firearm was relevant to the disputed material issue of whether Cornelison knew the weapons were located in his home. In Strong, we recognized "'[a] defendant denies both knowledge and intent when he asserts the 'mere presence' defense—that he was present but did not know of the presence of illegal [activity].'" Id. (quoting United States v. Tomberlin, 130 F.3d 1318, 1320 (8th Cir. 1997)) (second alteration in original). Cornelison's prior conviction for being a felon in possession of a firearm "address[ed] the material issue of his knowledge of the presence of the firearm and his intent to possess it." Id. Cornelison asserts our decision in Strong was in error because a defendant's prior conviction for unlawful possession of a firearm is not relevant to any material issues. But we cannot disregard controlling precedent. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("'It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.'" (quoting Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002))).

Cornelison also proposes the conviction was not higher in probative value than in prejudicial effect, but this proposition also is foreclosed by Strong. See Strong,

415 F.3d at 906. In <u>Strong</u>, we recognized the district court has broad discretion to balance the prejudicial effect of a prior conviction for a firearm offense against its probative value, and recognized "'the presence of a limiting instruction diminishes the danger of any unfair prejudice.'" <u>Id.</u> (quoting <u>United States v. Franklin</u>, 250 F.3d 653, 659 (8th Cir. 2001)). In the instant case, the district court considered the probative value of the evidence and potential for unfair prejudice, and gave an appropriate limiting instruction. There was no abuse of discretion. <u>See</u> <u>id.</u>

Cornelison further maintains the probative value of the evidence was substantially outweighed by its prejudicial effect, and the evidence should have been excluded under Rule 403 of the Federal Rules of Evidence. Because <u>Strong</u> decided the prejudicial impact of substantially similar evidence did not outweigh its probative value, the evidence in Cornelison's case necessarily was admissible under Rule 403's more relaxed standard. <u>See</u> <u>Strong</u>, 415 F.3d at 906.[5] The district court did not abuse its considerable discretion.

### D.    Jury Instructions

Cornelison challenges the district court's refusal to give two requested jury instructions. Because the district court did not err, we reject these challenges.

First, Cornelison argues the district court erred in refusing to give the updated version of the model instruction defining reasonable doubt. The model instructions

---

[5]<u>Strong</u> arguably applied a stricter standard for the admission of Rule 404(b) evidence than is required under the Federal Rules. <u>Compare</u> <u>Strong</u>, 415 F.3d at 905 (stating 404(b) evidence must be "higher in probative value than in prejudicial effect"), <u>with</u> <u>United States v. Green</u>, 151 F.3d 1111, 1113 (8th Cir. 1998) (stating such evidence is admissible if "its potential prejudice does not *substantially outweigh* its probative value" (emphasis added)). <u>Green</u> is consistent with the actual language of Rule 403—"substantially outweighed." We need not decide the correct standard for admission of such evidence in this case, because the evidence was admissible under either standard.

"'are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts.'" Bady v. Murphy-Kjos, 628 F.3d 1000, 1004 (8th Cir. 2011) (quoting United States v. Norton, 846 F.2d 521, 525 (8th Cir. 1988)). "'[A] defendant is not . . . entitled to a particularly worded instruction.'" United States v. Spires, 628 F.3d 1049, 1053 (8th Cir. 2011) (quoting United States v. Beale, 620 F.3d 856, 866 (8th Cir. 2010)). We will affirm a conviction if the instructions, "'taken as a whole, . . . fairly and adequately instruct the jurors on the applicable law." Id. (quoting United States v. Haas, 623 F.3d 1214, 1219 (8th Cir. 2010)).

"We have repeatedly upheld the use of" the reasonable doubt instruction the district court gave, id. at 1054, because it correctly and adequately conveys to the jury the meaning of reasonable doubt. The district court was not required to give any particular form of instruction, much less the draft version Cornelison proposed. See id. The district court's reasonable doubt jury instruction was not erroneous.

Cornelison also maintains the district court erred in refusing to give Cornelison's requested "theory of the defense" instruction. A defendant is entitled to a "theory of the defense" instruction if it correctly states the law, is supported by the evidence, and was timely requested. See United States v. Cantrell, 530 F.3d 684, 692 (8th Cir. 2008). Such an instruction, however, is not necessary if it is merely duplicative of the district court's other instructions. See Serrano-Lopez, 366 F.3d at 637.

Cornelison relies on United States v. Manning, 618 F.2d 45, 47-48 (8th Cir. 1980), to argue Cornelison was entitled to his "theory of the defense" instruction. In Manning, the defendant, Manning, was riding in an automobile with two other men when officers observed an illegal shotgun dropped in a gutter close to the vehicle. Id. at 46. Manning testified at trial, asserting he was merely a backseat passenger in the vehicle and did not know that one of the other two men possessed the firearm. Id. at 46-47. Manning requested an instruction clarifying that "[m]ere presence on the

scene plus association with illegal possessors is not enough to support a conviction for illegal possession of an unregistered firearm," but the district court declined to give the instruction. Id. at 47. Manning was convicted. Id. at 46. On appeal, we held the trial court should have given Manning's mere possession instruction, explaining that "the instructions given by the district court regarding constructive possession c[ould ]not be said to have covered the substance of Manning's 'mere presence' defense" because the instructions did not "acknowledg[e] Manning's defense that he was merely a backseat passenger." Id. at 48.

In Cantrell, the defendant was arrested in a house containing methamphetamine, drug paraphernalia, and illegal firearms. See Cantrell, 530 F.3d at 687-88. Cantrell admitted to owning the drugs and paraphernalia. Id. at 688, 693. At trial, Cantrell requested a "mere presence" instruction, but the district court overruled the request. Id. at 692. We affirmed the district court, determining there was "no evidence Cantrell was 'merely present'" at the house because Cantrell's possessions, including his drugs and paraphernalia, were located in close proximity to the weapons. Id. at 693. Further, we held "a 'mere presence' instruction was unnecessary in Cantrell's case because it 'would have duplicated the instructions outlining the elements of the offense, the definition of possession, and the burden of proof.'" Id. (quoting Serrano-Lopez, 366 F.3d at 637).

Like the defendant in Cantrell, Cornelison was not merely present in the house—Cornelison resided at the house and was the sole occupant. See Mabry, 3 F.3d at 247 (recognizing there is a "normal inference of dominion" supporting constructive possession where a firearm is discovered in the defendant's residence). The district court's instructions regarding the elements of the offense, the presumption of innocence and the government's burden of proof, and the definition of possession adequately instructed the jury on the requirements to convict, including Cornelison's theory of the defense. See Cantrell, 530 F.3d at 693. Cornelison's

proposed instruction was duplicative, and the district court did not err in denying the requested instruction. See id.

### E. Fine

Cornelison also objects to the district court's imposition of a fine. Because Cornelison did not object at sentencing, our review is limited to plain error. See Allmon, 500 F.3d at 807. The PSR indicated, in spite of Cornelison's limited financial prospects, "[i]t is believed [Cornelison] can perform some type of work and is able to make payments toward a fine." In imposing the fine, the district court remarked the fine was "a legitimate part of the sentence and [the district court] d[id] expect [Cornelison] to pay it."

Section 5E1.2(a) of the Guidelines provides "[t]he [district] court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." The defendant has the burden to prove he cannot pay a fine within the Guidelines range. See U.S.S.G. § 5E1.2(e); see also United States v. Walker, 900 F.2d 1201, 1206 n.5 (8th Cir. 1990) (explaining the district court may impose a lesser fine or waive the fine "even though the defendant does not establish inability to pay" (emphasis omitted)). We may vacate a fine "when the district court does not make findings regarding the defendant's ability to pay." Allmon, 500 F.3d at 807.

The district court, with explanation, imposed the minimum fine under the Guidelines, and Cornelison did not challenge the PSR's finding that Cornelison could work to pay a fine. The district court did not commit plain error in imposing the fine.

### III. CONCLUSION

We affirm.

_____

-11-