UNITED STATES of America, Appellee,

v.

Wendell T. JACKSON, Appellant.

No. 96–3074.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 14, 1997.

Decided May 20, 1997.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs.

` Eileen F. Sheehan, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R.

Fisher and Robert A. Spelke, Assistant United States Attorneys, were on the brief.

Before: SILBERMAN, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant received a 15–year mandatory minimum sentence under the Armed Career Criminal Act after the police, during an investigatory stop of the car he was driving, found a firearm in his possession. Jackson now contests both the reasonableness of the stop and his sentence. We affirm.

## I.

At approximately 8:20 p.m. on August 1, 1995, two District of Columbia Metropolitan Police Department officers on patrol observed appellant's car make a U-turn in front of the officers' vehicle. Noticing that the rear vent window on the passenger side of the vehicle was broken, the officers decided to stop the car to investigate whether it was stolen. After the patrol car's emergency lights were activated, the car began to pull over, and the officers noticed the passenger reach down and place something underneath his seat. One of the officers (Newsham) approached the vehicle and asked the driver, Jackson, for his license and vehicle registration. Newsham then noticed a beer bottle (which turned out to be nonalcoholic) on the seat between Jackson and the passenger, and asked Jackson to step out of the car. As Jackson left, Newsham saw him drop something back into the car and, as he escorted Jackson to the rear of the vehicle, Newsham saw a handgun between the sill of the door and the driver's seat. After turning Jackson over to the other officer, Newsham returned to the vehicle, removed the gun from the car, and placed Jackson under arrest. Jackson was subsequently charged with unlawful possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g)(1) (1994), unlawful possession of ammunition by a convicted felon, *see id.,* and carrying a pistol without a license, *see* D.C.CODE ANN. § 22–3204(a) (1996).

As it happens, the car was not stolen; it was owned by Jackson's sister. Jackson accordingly moved to suppress the gun on the ground that it had been the fruit of an unconstitutional seizure of his automobile. At the suppression hearing, both officers testified that they pulled the car over because the side vent window appeared recently broken, it was uncovered and still had glass fragments in it. In their experience, a broken side vent window is indicative that a car may be stolen: car thieves often break the smallest window on a car to gain entry. Jackson testified on his own behalf. He admitted, of course, that the window was broken, but contested that it was, or appeared to be, recently broken. He claimed that the window had actually been broken more than three weeks before, that all of the glass had been removed, and that gray duct tape had been placed over the window.

The district court did not resolve this dispute. Instead, the court found that:

> a broken rear window together with the officer's experience in other arrests is sufficient proof to support a reasonable suspicion that in the officer's mind the car was stolen. Here we have a high crime area in the evening hours to go with those other factors, and we have over 160 arrests or participation in arrests and recovery of stolen vehicles by these officers in their experience, and Officer Newsham almost on a daily basis is recovering stolen automobiles in that neighborhood.

Rejecting Jackson's other challenges to the stop and arrest—Jackson had argued *inter alia* that, during the stop, the police were permitted only to ask him for his driver's license and registration—the district court declined to suppress the gun. After the suppression motion was denied, Jackson entered a guilty plea to the § 922(g) gun possession charge, explicitly preserving the right to appeal the denial of his suppression motion.

Appellant now contests only the original stop, and argues that under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, the police did not have reasonable suspicion of unlawful conduct when they stopped his car. The district

court, it is argued, was required to determine whether the window appeared recently broken because it is unreasonable for the police to suspect that a car has been stolen if it simply has a broken window. After all, many legitimate car owners drive cars with temporarily repaired side vent windows, whereas car thieves do not generally stop to repair the damage caused by their entry. According to Jackson, we must remand to the district court for a determination of whether the window was, or appeared to be, recently broken (which, Jackson appears to concede, would create reasonable suspicion).

We disagree. Although it is not a necessary inference from a broken side vent window that a car has been stolen, it is, as the officers testified, a *reasonable inference. See In re C.A.P.,* 633 A.2d 787, 789 (D.C.1993) ("smashed rear vent window, taken together with the officer's experience ... was sufficient to support a reasonable suspicion"); *Commonwealth v. Epps,* 415 Pa.Super. 231, 608 A.2d 1095, 1097 (1992) ("broken rear vent window, as understood by those versed in the field of law enforcement, constituted sufficient grounds to give rise to reasonable suspicion"). To be sure, as a New York court has noted, *see People v. Elam,* 179 A.D.2d 229, 584 N.Y.S.2d 780, 781–82 (N.Y.App.Div. 1992), it may be equally consistent with other possibilities—such as theft of a car's contents or vandalism—but we disagree with *Elam* that it is therefore unreasonable for the police to infer that a car with a broken rear side vent window may be stolen. The officers had "a reasonable, articulable suspicion sufficient to stop the car." *United States v. Mangum,* 100 F.3d 164, 169 (D.C.Cir.1996).

## II.

Jackson also contests his sentence under the Armed Career Criminal Act, which imposes a minimum 15–year sentence on any person who violates 18 U.S.C. § 922(g) (1994) and who "has three previous convictions by any court ... for a violent felony or serious drug offense, or both, committed on occa-

sions different from one another." 18 U.S.C. § 924(e) (1994). Jackson's presentence report noted that he had convictions in the District of Columbia in 1986 and 1992 for attempted robbery, in violation of D.C.Code Ann. § 22–2901 (1996); two District of Columbia shoplifting convictions under D.C.Code Ann. § 22–3813 (1996); District of Columbia drug convictions for simple possession of PCP, *see* D.C.Code§ 33–541(d) (1993), and possession with intent to distribute marijuana, *see* D.C.Code § 33–541(a)(2)(D) (1993); and three housebreaking and one attempted housebreaking convictions in Maryland under former Md. Ann.Code of 1957 art. 27 § 30(b) (1976). With a two-point reduction for acceptance of responsibility, the presentence report indicated that a Sentencing Guidelines range of 188–235 months was appropriate, but the district court *sua sponte* awarded Jackson a three-point reduction for acceptance of responsibility, thereby decreasing Jackson's Sentencing Guidelines range to 168–210 months. Because Jackson had not challenged "the prior crimes of violence under the D.C.Code that [he had] been convicted of," and because "the plea [was] to a minimum of 15 years,"[1] the district court thought the Armed Career Criminal Act applicable. The court accordingly sentenced Jackson to 180 months, which placed Jackson in "the middle range of [the] guideline."

Jackson now argues that, although he never objected to the 15–year minimum sentence, it was plain error to impose the mandatory minimum because his District of Columbia drug convictions were not for "serious drug offense[s]" and his other convictions were not "violent felon[ies]." 18 U.S.C. § 924(e). Alternatively, Jackson claims that even if the error were not *plain,* his counsel below was ineffective in failing to object to the terms of his plea agreement and his sentence. Since the crucial issue is strictly a question of law, and if Jackson is incorrect it is unnecessary to determine whether the plain error or ineffective assistance of counsel tests were met, we consider the underlying legal issue first:

1. Jackson's plea agreement indicated that "since Mr. Jackson has three prior felony convictions, he is subject to ... a mandatory period of incarceration of not less than fifteen (15) years." Several times during the plea proceeding the district court noted that Jackson would be subject to the Act's 15–year mandatory minimum, and Jackson twice expressed assent.

whether any three of Jackson's prior convictions qualify as "serious drug offense[s]" or "violent felon[ies]" such that he is subject to § 924(e).

Jackson argues, and the government concedes, that neither of Jackson's District of Columbia drug convictions was for a "serious drug offense": neither was an offense "for which a maximum term of imprisonment of ten years or more [was] prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). *See* D.C.CODE ANN. § 33–541(d) (maximum sentence of one yearfor possession of controlled substance); D.C.CODE§ 33–541(a)(2)(D) (maximum sentence of one year for possession with intent to distribute marijuana). Nor does the government contend that shoplifting in the District of Columbia qualifies as a "violent felony." The question then becomes whether any three of Jackson's other convictions—for attempted robbery in the District of Columbia in 1986 and 1992, and for housebreaking and attempted housebreaking in Maryland in 1982—were for a "violent felony," which the Armed Career Criminal Act defines as "any crime punishable by imprisonment for a term exceeding one year" that—

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is *burglary*, arson, or extortion, involves the use of explosive, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Jackson contends that we may look only to his District of Columbia convictions, and not to those in Maryland, in determining if his sentence were proper because the district court referenced only the "prior crimes of violence under the D.C.Code" in imposing the mandatory minimum. But as Jackson conceded at oral argument, the minimum sentence under § 924(e) is required whenever a person has *any* three qualifying convictions; therefore, if *any* three of Jackson's convictions, in the District of Columbia or elsewhere, qualify as "serious drug offense[s]" or "violent felon[ies]," the sentence was appropriate.

■ In 1982, Maryland defined housebreaking as:

> the crime of breaking a dwelling house in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom.

MD. ANN.CODE art. 27 § 30(b). *See also Hawkins v. State*, 291 Md. 688, 436 A.2d 900, 902 (1981). It might have been thought that Jackson's housebreaking convictions would qualify as "burglary" under § 924(e)(2)(B)(ii), but in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Court held that to qualify as "burglary" under § 924(e), a crime must have "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599, 110 S.Ct. at 2158. A crime thus constitutes "burglary" only if "its statutory definition substantially corresponds to 'generic burglary,'" or if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602, 110 S.Ct. at 2160.

The government concedes that Jackson's housebreaking (and attempted housebreaking) convictions do not fall within *Taylor*'s generic definition of "burglary": the statute required "breaking" only, and not "entering," *see Hawkins*, 436 A.2d at 902. Instead, it is argued that housebreaking so defined "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In *Taylor*, the Court had noted that the government "is free to argue that any offense"—including offenses similar to generic burglary—should count toward enhancement as falling within the "otherwise" clause under § 924(e)(2)(B)(ii). 495 U.S. at 600 n. 9, 110 S.Ct. at 2159 n. 9. The government therefore contends that the breaking of a dwelling house, even where entry is not effected, presents a risk of a violent confrontation between the criminal and the occupant.

To be sure, a confrontation may be more likely to occur, as Jackson argues, if the perpetrator has actually entered the dwelling, and such a confrontation may be more

likely to result in violence if it occurs while the perpetrator is inside the dwelling—because the perpetrator is likely to cause greater alarm to whomever he confronts and is likely to have no easy way out. Still, that a breaking and entering may create a greater risk than a mere breaking does not mean that breaking itself, which requires the "unloosing, removing, or displacing of any covering or fastening of the premises," *Reagan v. State,* 2 Md.App. 262, 234 A.2d 278, 281 (1967) (citations and quotations omitted), does not involve "a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Breaking a dwelling house—*i.e.,* a house that is likely to be occupied—creates a substantial risk of confrontation between the perpetrator and an occupant, or perhaps a passerby. And where such a confrontation occurs, there is a substantial risk that serious injury to the occupant or passerby will occur. The Maryland statute thus prescribes generic conduct with the (serious potential) risk of physical injury to another.

*United States v. Martinez,* 954 F.2d 1050 (5th Cir.1992), and *United States v. Strahl,* 958 F.2d 980 (10th Cir.1992), on which Jackson relies, are distinguishable. In each case, the court held that *attempted* burglary (in Texas and Utah, respectively) does not involve serious potential risk of physical injury to another because a defendant could be convicted without even being in the vicinity of a building. *See Martinez,* 954 F.2d at 1054 (Under Texas law, a defendant "who had taken steps which tended to effect the commission of a burglary could be arrested far from the target of the burglary and still be convicted of the attempt.") (internal quotation marks omitted); *Strahl,* 958 F.2d at 986 (Under Utah law, "an attempted burglary conviction may be based upon conduct such as making a duplicate key, 'casing' the targeted building, obtaining floor plans of a structure, or possessing burglary tools."). In Maryland, however, Jackson's housebreaking

convictions required that he actually "break" a dwelling, placing him in direct proximity to the home, an action we believe involves a "serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). *Cf. United States v. Payne,* 966 F.2d 4, 9 (1st Cir.1992) (Under Massachusetts law, attempted burglary qualifies under § 924(e)(2)(B)(ii) because "the defendant will have come close enough to someone else's premises to risk a confrontation likely to result in violence."). Jackson's attempted housebreaking conviction might not qualify, but we need not reach that issue if Jackson has three qualifying housebreaking convictions.

◼ Jackson's last argument against the use of his Maryland housebreaking convictions is that these convictions were not for offenses "committed on occasions different from one another," 18 U.S.C. § 924(e), because they were committed close together in time (on September 22, 24, and 30, 1982) in the same neighborhood, and because they were adjudicated together, with concurrent sentences of probation imposed on each. These events, he argues, were part of a single "spree of criminal activity" that cannot count as three distinct predicate convictions under § 924(e).

This is a question of first impression for us. But our sister circuits, save perhaps one,[2] have held uniformly that offenses were "committed on occasions different from one another" if they arose out of "separate and distinct criminal episode[s]." *United States v. Hudspeth,* 42 F.3d 1015, 1019 (7th Cir. 1994) (*en banc*) (collecting cases), *cert. denied,* —— U.S. ——, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). Although the courts have not settled on a precise test for determining what are separate and distinct criminal episodes, *compare, e.g., Hudspeth,* 42 F.3d at 1021 (multiple criminal episodes where "crimes were committed sequentially, against different victims, at different times, and at different locations") *with United*

---

2. *Compare United States v. Balascsak,* 873 F.2d 673, 682 (3d Cir.1989) (*en banc*) (plurality holding that "first conviction must have been rendered before the second crime was committed"), *cert. denied,* 498 U.S. 864, 111 S.Ct. 173, 112 L.Ed.2d 138 (1990) *with United States v. School-*

*craft,* 879 F.2d 64, 73–74 (3d Cir.) (rejecting the plurality's reasoning in *Balascsak* and finding "persuasive" the view that the criminal episodes must be "distinct in time"), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989).

*States v. Tisdale,* 921 F.2d 1095, 1098–99 (10th Cir.1990) (three separate criminal episodes where defendant burgled three stores in one mall on the same evening because the burglaries were "distinct in time" and the defendant was free to end his criminal activity after each), *cert. denied,* 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991), Jackson's Maryland housebreaking convictions would meet any of the tests relied upon by other courts: the housebreakings were committed at different times (on September 22, 24, and 30, 1982), at different locations and against different victims, and Jackson was clearly free to desist from the subsequent criminal activity after each breaking.

Accordingly, we reject appellant's argument that his three Maryland housebreaking convictions are not § 924(e) predicates,[3] and the judgment of the district court is affirmed.

---

**3.** We thus do not decide whether Jackson's District of Columbia attempted robbery convictions qualify as § 924(e) predicates—either because they were for offenses that "otherwise involve conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), or because the sentencing materials indicate that the convictions satisfied *Tay-* *lor's* generic definition of burglary. *Cf. United States v. Harris,* 964 F.2d 1234, 1237 (1st Cir. 1992) (where it is unclear from an indictment whether the defendant was charged with the "generically violent crime … rather than the generically nonviolent crime," sentencing court may look to presentence report to determine with which crime the defendant was charged).