# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1143

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Timothy Jerome McCall, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 14, 2005
Filed: March 15, 2006

_____

Before LOKEN, Chief Judge, LAY, WOLLMAN, ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, and BENTON, Circuit Judges, en banc.

_____

LOKEN, Chief Judge.

Timothy J. McCall pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court imposed the fifteen-year minimum prison sentence mandated by 18 U.S.C. § 924(e)(1) for a § 922(g)(1) offender who has three prior "violent felony" convictions. McCall appeals, arguing that the district court erred in concluding that his three prior felony convictions for driving while intoxicated in Missouri were violent felonies that trigger the § 924(e) enhancement. This issue requires us to construe and apply the definition of "violent felony" found in § 924(e)(2)(B)(ii):

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that --
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . . (Emphasis added.)

A panel of this court reversed the fifteen-year sentence, United States v. McCall, 397 F.3d 1028 (8th Cir. 2005), concluding that it was bound by a prior panel's decision that felony DWI offenses are not "crimes of violence" under an identically worded "otherwise involves" provision in U.S.S.G. § 4B1.2(a)(2). See United States v. Walker, 393 F.3d 819 (8th Cir. 2005). We granted the government's petition for rehearing en banc to consider *de novo* whether a felony DWI conviction in Missouri is a violent felony under the "otherwise involves" provision in § 924(e)(2)(B)(ii). We conclude that felony *driving* while intoxicated is a violent felony. However, because the Missouri felony DWI offense includes non-driving conduct as well, we remand for further sentencing proceedings at which the government may seek to prove that McCall's prior convictions were driving offenses, using the limited universe of evidence permitted by Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 125 S. Ct. 1254 (2005).

**I.**

Many decisions of this court and our sister circuits have construed the "otherwise involves" provision in 18 U.S.C. § 924(e)(2)(B)(ii) since the provision was enacted as part of the Armed Career Criminal Act of 1984. The question recurs frequently and has a significant impact on an offender's sentence. The statute was designed to implement an important principle of federal sentencing -- violent career criminals who possess firearms should be severely punished. But the legislative history reviewed by the Supreme Court in Taylor, 495 U.S. at 581-90, demonstrates

that Congress struggled to define the types of violent felonies that should trigger the sentence enhancement. Subsection 924(e)(2)(B)(i) used language taken directly from the definition of a "crime of violence" in 18 U.S.C. § 16(a) -- a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." But subsection 924(e)(2)(B)(ii), which added categories of violent or dangerous property crimes to the universe of violent felonies, used an odd structural amalgam -- "*is* burglary . . . or otherwise *involves conduct* that presents a serious potential risk of physical injury to another." Thus, the first question in construing the "otherwise involves" provision is to determine whether its focus is on the statutory elements of a prior conviction, or on the facts ("conduct") underlying that conviction.

In Taylor, the Supreme Court held that the enumerated crime "burglary" in § 924(e)(2)(B)(ii) means "'burglary' [in] the generic sense in which the term is now used in the criminal codes of most States." 495 U.S. at 598. To determine whether a defendant's prior conviction was for generic burglary, and therefore was a violent felony, the Court adopted a "formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. at 600.

The language of the first operative clause in § 924(e)(2)(B)(ii) -- "is burglary, arson, or extortion" -- almost commands use of a formal categorical approach in determining what offenses are included within these enumerated crimes. But the language of the provision here at issue -- "otherwise involves *conduct*" -- suggests that the facts underlying a particular offense may be relevant. The Supreme Court did not answer this question in Taylor, see 495 U.S. at 600 n.9, and our prior panel opinions have been inconsistent. Compare United States v. Mincks, 409 F.3d 898, 899-900 (8th Cir. 2005) (reviewing only the statutory elements), with United States v. Johnson, 326 F.3d 934, 937 (8th Cir. 2003) (reviewing the underlying facts).

Like our sister circuits, we resolve this troubling ambiguity by adopting the formal categorical approach of Taylor in construing the "otherwise involves"

-3-

provision in § 924(e)(2)(B)(ii).  As the Court noted in Taylor, § 924(e)(1) "refers to 'a person who . . . has three previous *convictions*' *for* -- not a person who has *committed* -- three previous violent felonies." 495 U.S. at 600 (emphasis added).  This is textual evidence that the statute "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."  Id. at 602.  Moreover, a contrary interpretation that focused on the underlying facts would embroil sentencing courts "in an elaborate factfinding process regarding the defendant's prior offenses," Taylor, 495 U.S. at 601, and might raise serious Sixth Amendment concerns, see Shepard, 125 S. Ct. at 1262-63.  Therefore, to determine whether a prior conviction was a violent felony within the meaning of the "otherwise involves" provision in § 924(e)(2)(B)(ii), the sentencing court must first determine whether the elements of that prior crime involved or described conduct that "necessarily entails a serious potential risk of physical injury."  United States v. Montgomery, 402 F.3d 482, 488 (5th Cir. 2005).[1]

## II.

We must next consider the decision in Walker, endorsed by the dissent, that the "otherwise involves" provision should be limited to violent crimes of "active aggression" that are similar to the crimes enumerated in § 924(e)(2)(B)(ii).  In reaching this conclusion, the panel in Walker relied on two canons of statutory

---

[1]Accord United States v. Hargrove, 416 F.3d 486, 494 (6th Cir. 2005); United States v. Melton, 344 F.3d 1021, 1026-29 (9th Cir. 2003), cert. denied, 541 U.S. 953 (2004); United States v. Howze, 343 F.3d 919, 920-22 (7th Cir. 2003); United States v. James, 337 F.3d 387, 389-91 (4th Cir. 2003), cert. denied, 540 U.S. 1134 (2004); United States v. Jackson, 301 F.3d 59, 61-63 (2d Cir. 2002), cert. denied, 539 U.S. 952 (2003); United States v. Sacko, 178 F.3d 1, 7 (1st Cir. 1999); United States v. Jackson, 113 F.3d 249, 251-53 (D.C. Cir.), cert. denied, 522 U.S. 901 (1997); United States v. Phelps, 17 F.3d 1334, 1342 (10th Cir.), cert. denied, 513 U.S. 844 (1994); United States v. O'Brien, 972 F.2d 47, 49-53 (3d Cir. 1992), cert. denied, 510 U.S. 875 (1993).

construction, *noscitur a sociis* and *ejusdem generis*; fragments of the legislative history reviewed in greater depth in <u>Taylor</u>; dicta in the First Circuit's decision in <u>United States v. Doe</u>, 960 F.2d 221 (1992); and the Supreme Court's recent interpretation of 18 U.S.C. § 16(b) in <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004). We conclude that this analysis is unpersuasive.

In <u>Leocal</u>, the Court construed § 16(b), which defines a "crime of violence" as a felony which, "by its nature, involves a substantial risk that physical force against the person or property of another may be *used* in the course of committing the offense." The Court held that the plain language of § 16(b), the same language Congress used in § 924(e)(2)(B)(i), limits that statute to "violent, active crimes" because the word "used" incorporates a *mens rea* component and thus requires that an offender's conduct be more than "merely accidental or negligent." 543 U.S. at 11. By contrast, as the <u>Leocal</u> opinion noted, <u>id.</u> at 10 n.7, the "otherwise involves" provision in § 924(e)(2)(B)(ii) is not so limited. It focuses on "conduct that *presents* a serious potential risk of physical injury to another," not on the intent of the offender. See <u>United States v. Sperberg</u>, 2005 WL 3455832, *2 (7th Cir. Dec. 19, 2005); <u>United States v. Scott</u>, 413 F.3d 839, 840 (8th Cir. 2005). When a statute's plain language is this clear, it is controlling, without regard to contrary hints in the legislative history and without the need to refer to the canons of *noscitur a sociis* and *ejusdem generis*. See <u>United States v. Vig</u>, 167 F.3d 443, 447-49 (8th Cir. 1999); <u>United States v. Smith</u>, 35 F.3d 344, 346 (8th Cir. 1994).

If we look beyond the plain language of the statute, the legislative history of § 924(e)(2)(B)(ii) described in <u>Taylor</u> undermines <u>Walker</u>'s reliance on interpretative canons. <u>Taylor</u> explained that the enumerated crimes and the word "otherwise" were <u>added to</u> the "involves conduct" language. The form of the addition made the "otherwise involves" provision look like a catchall when in fact it was initially the operative provision. See 495 U.S. at 586-87. Adding the enumerated crimes served the obvious purpose of including all prior convictions for those crimes (burglary, arson, extortion, use of explosives), regardless of whether they present a serious

-5-

potential risk of physical injury. <u>Id.</u> at 597. Given this drafting sequence, it is wrong to infer that Congress intended to limit the "otherwise involves" provision to offenses that are similar to the enumerated add-ons.

For these reasons, though we give due regard to contrary dicta in <u>Doe</u> which cautioned against construing the "otherwise involves" provision to include risk-creating crimes "that do not seem to belong there," 960 F.2d at 225, we conclude that we must construe the provision consistent with its plain language. We therefore reject the analysis in <u>Walker</u> and hold that a violent felony within the meaning of § 924(e)(2)(B)(ii) includes any crime whose elements involve conduct that necessarily presents a serious potential risk of physical injury to another.

### III.

This brings us to the principal question at issue, whether the elements of a felony DWI conviction place that offense within the "otherwise involves" provision in § 924(e)(2)(B)(ii). To fall within this provision, the criminal conduct must present a serious risk[2] of physical injury or, as the Supreme Court said in <u>Taylor</u>, the "inherent potential for harm to persons," 495 U.S. at 588. Physical injury need not be an element of the offense. But because § 924(e) is focused on the elements of the offense, the inherent potential for harm must be present, if not in every violation, at least in a substantial portion of the circumstances made criminal by the statute. <u>See</u> <u>Montgomery</u>, 402 F.3d at 488-89. Statistics quantifying the risk of physical harm created by a class of crimes are helpful but not essential to this judicial task. <u>See</u> <u>Howze</u>, 343 F.3d at 923-24.

---

[2]We are inclined to agree with Judge Posner that "'potential risk' appears to be a redundancy" in the statutory language. <u>United States v. Shannon</u>, 110 F.3d 382, 385 (7th Cir.) (en banc), <u>cert. denied</u>, 522 U.S. 888 (1997).

Driving a car creates a risk of physical injury to the driver and others, but it is not a "serious potential risk" within the meaning of § 924(e)(2)(B)(ii). Driving under the influence, however, dramatically increases the risk of physical injury. In 2004, alcohol-related crashes resulted in 16,694 fatalities, 39% of all traffic fatalities, and almost a quarter-million more injuries.[3] A driver with a blood alcohol concentration of .08 is 11.1 times more likely to cause a fatal accident than a sober driver.[4] Thus, "[n]o one can seriously dispute the magnitude of the drunken driving problem." Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 451 (1990).

In Missouri, as elsewhere, felony DWI convictions are reserved for the persistent drunk driver. Thus, the person given an initial DWI misdemeanor citation while driving a few blocks home from a neighborhood pub will not be guilty of a violent felony. The increased punishment for a felony DWI offense is directly related to the fact that persistent drunk driving creates a substantially greater risk of physical injury to others. See Robert D. Brewer et al., The Risk of Dying in Alcohol-Related Automobile Crashes Among Habitual Drunk Drivers, 331 New. Eng. J. Med. 513 (1994). Moreover, this risk-creating conduct is not inadvertent or merely negligent. As the Seventh Circuit said in United States v. Rutherford, 54 F.3d 370, 376-77 (7th Cir.), cert. denied, 516 U.S. 924 (1995):

> Drunk driving is a reckless act, perhaps an act of gross recklessness. Any drunk driver who takes to the road should know he runs a risk of injuring another person . . . . The dangers of drunk driving are well-known and well documented. Unlike other acts that may present some risk of physical injury, . . . the risk of injury from drunk driving is neither

---

[3]See National Highway Traffic Safety Administration, Traffic Safety Facts 2004: A Compilation of Motor Vehicle Crash Data from the Fatality Analysis Reporting System and the General Estimates Systems 32, 111 <http://www.nhtsa.dot.gov>.

[4]See National Institute on Alcohol Abuse and Alcoholism of the National Institutes of Health, Alcohol Alert No. 31 ¶ 5 (1996) <http://pubs.niaaa.nih.gov>.

conjectural nor speculative. Driving under the influence vastly increases the probability that the driver will injure someone in an accident . . . . Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well-known. This is sufficient to satisfy the "serious risk" standard . . . .

We agree and therefore conclude that, by its nature, a felony conviction for *driving* while intoxicated presents a serious potential risk of physical injury to another and is therefore a violent felony under the "otherwise involves" provision in § 924(e)(2)(B)(ii). Accord United States v. Moore, 420 F.3d 1218 (10th Cir. 2005); United States v. DeSantiago-Gonzalez, 207 F.3d 261 (5th Cir. 2000).

Having reached this general conclusion, we must next examine the specific elements of McCall's felony DWI convictions. In Missouri, "[a] person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated or drugged condition." Mo. Rev. Stat. § 577.010.1. (boldface in original). The term "operates" is defined as "physically driving or operating a motor vehicle." Mo. Rev. Stat. § 577.001.1. The DWI offense is a class D felony if the offender had two or more "intoxication-related traffic offenses" within ten years of the instant offense. Mo. Rev. Stat. § 577.023.1(2)(a), .3. Thus, the statutory elements of McCall's felony DWI convictions criminalize repeatedly driving while impaired, conduct that necessarily presents a serious potential risk of physical injury to others.

However, the Supreme Court of Missouri has construed the statutory term "operates" to include both driving a vehicle and merely causing the vehicle to function by starting its engine. See Cox v. Director of Revenue, 98 S.W.3d 548, 550-51 (Mo. 2003). This makes the felony DWI offense overinclusive, for purposes of the "otherwise involves" provision in § 924(e)(2)(B)(ii), because it criminalizes non-driving conduct that does not necessarily present a serious risk of physical injury to

others.[5] For example, the inebriated car owner who recognizes his impaired condition and turns on the engine of a parked vehicle to keep warm while sobering is not risking physical harm to others but is violating the Missouri DWI statutes as construed. Thus, as the Tenth Circuit concluded in construing Nevada's similar felony DWI statute, not every felony DWI conviction in Missouri is a violent felony under § 924(e)(2)(B)(ii). See Moore, 420 F.3d at 1224.

## IV.

In Taylor, the Supreme Court considered how to apply § 924(e)(2)(B)(ii) to a state burglary statute that was overinclusive, that is, that defined burglary to include a broader range of conduct than generic burglary. Modifying its formal categorical approach in order to avoid excluding all convictions under such a statute, the Court held that the prior offense is a violent felony if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." 495 U.S. at 602. In Shepard, the Court extended this approach to guilty plea convictions but limited the government's proof that the defendant pleaded guilty to a generic burglary offense to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 125 S. Ct. at 1263. In applying the "otherwise involves" provision in § 924(e)(2)(B)(ii), we deal with a somewhat different type of overinclusiveness. But we conclude that the analysis adopted in Taylor and Shepard should nonetheless apply. Therefore, the district court may look to the judicial record, as limited by Taylor and Shepard, to determine whether juries

---

[5]Prior to 1996, Missouri's felony DWI offense encompassed even more non-driving conduct because it included "being in actual physical control of a motor vehicle," Mo. Rev. Stat. § 577.001.1 (1995), as that term was construed in State v. Dey, 798 S.W.2d 210 (Mo. App. 1990). Two of McCall's three prior felony DWI convictions were under the prior statute.

were required to find, or guilty pleas necessarily rested on the fact, that McCall's three prior convictions involved driving while intoxicated.

McCall's PSR recited the fact of three prior felony convictions for "driving while intoxicated" but did not disclose whether he was convicted after trials or guilty pleas. The PSR recited underlying facts seeming to establish that in each case McCall was driving while intoxicated, but the facts were attributed to "police reports" and parole board "records," documents that may not be used to establish a violent felony under the modified categorical approach mandated by Taylor and Shepard. Though McCall did not object to these PSR recitals, he did object to the § 924(e) enhancement. At sentencing, relying on our opinion in United States v. Jernigan, 257 F.3d 865, 867 (8th Cir. 2001), both counsel and the district court understandably believed that the relevant inquiry was the conduct underlying the offenses. Neither counsel nor the court felt constrained by the more truncated inquiry mandated by Taylor and Shepard. Thus, the record on appeal includes no charging documents, no jury instructions, no written plea agreements, and no plea colloquies or judicial findings of the facts underlying a plea confirmed by McCall.

In these circumstances, we conclude that the fact recitals in the PSR are not an adequate basis for affirming McCall's sentence. This is not a case where the PSR described prior offense conduct without stating its documentary sources. In such cases, we have held that failure to object relieved the government of its obligation to introduce at sentencing the documentary evidence Taylor or Shepard requires. See United States v. Menteer, 408 F.3d 445, 446-47 (8th Cir. 2005); United States v. Balanga, 109 F.3d 1299, 1304 & n.7 (8th Cir. 1997); accord United States v. Bregnard, 951 F.2d 457, 460 n.3 (1st Cir. 1991), cert. denied, 504 U.S. 973 (1992). Nor is this a case where the PSR described conduct derived from documents Taylor or Shepard permit. Instead, the PSR expressly relied on police reports and probation records that would be inadmissible at sentencing under Taylor and Shepard.

Timothy McCall objected to the § 924(e) enhancement. The minimum sentence mandated by that enhancement is severe, and the parties and the court understandably failed to perceive the governing evidentiary principles that we have now clarified. In these circumstances, we reverse the judgment of the district court and remand the case for further sentencing proceedings at which the government may seek to prove, with evidence admissible under Taylor or Shepard, that McCall's three prior felony DWI convictions were violent felonies under the "otherwise involves" provision in 18 U.S.C. § 924(e)(2)(B)(ii). For this purpose, the district court may permit the parties to expand the sentencing record, as we have approved in prior cases remanded for resentencing in light of Taylor. See United States v. Cornelius, 968 F.2d 703, 705 (8th Cir. 1992); United States v. Taylor, 932 F.2d 703, 707 (8th Cir.), cert. denied, 502 U.S. 882 (1991).

LAY, with whom WOLLMAN and BYE, Circuit Judges, join, dissenting.

I respectfully dissent. Felony drunken driving convictions are not violent felonies under the Armed Career Criminal Act ("ACCA" or "Act"). The "otherwise involves" provision of 18 U.S.C. § 924(e)(2)(B)(ii) can be interpreted in more than one reasonable manner. The ambiguity of subsection (B)(ii) is resolved when the subsection is viewed in light of Congress's purpose in enacting the ACCA. When defining crimes that qualify as "violent felonies" under subsection (B)(ii) for enhancement purposes, Congress intended to encompass serious property crimes that are similar in nature to burglary, arson, extortion, and crimes involving the use of explosives. Congress did not, however, intend to include crimes like drunk driving for enhancement purposes, as drunk drivers are not inherently more dangerous to society when they violate gun possession laws. In this case, McCall should be sentenced under the United States Sentencing Guidelines ("Guidelines") as a felon in possession of a gun. His sentence should not be enhanced under § 924(e)(2)(B)(ii).

## I.

As an initial matter, it may be useful to review what is—and is not—at issue in this case. First, we are not faced with the question of how McCall should be punished for his three convictions for felony drunk driving. The State of Missouri presumably convicted and sentenced McCall in accordance with Missouri drunk driving laws and McCall presumably served the sentences imposed. Second, we are not faced with the question of whether McCall should be punished for being a felon in possession of a firearm. Under 18 U.S.C. § 922(g)(1), Congress has mandated that any person "who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year" may not possess a firearm. In this case, McCall pleaded guilty to being a felon in possession of a firearm after the police discovered a rifle in his home. Under the Guidelines, the presumptive sentencing range for McCall was 27 to 33 months.[6] However, the government sought to have McCall's sentence enhanced under the ACCA, arguing that McCall's three previous convictions for felony drunk driving constituted "violent felonies." See 18 U.S.C. § 924(e). Under the ACCA, a felon in possession of a gun with three qualifying "violent felony" convictions is subject to a mandatory 15-year minimum sentence. Thus, the district court's determination that McCall's three felony drunk driving convictions were "violent felonies" mandated that his sentence be increased nearly six-fold. Rather than being sentenced in the 27-to-33-month range, McCall was sentenced to 180 months. The question to which this dissent objects in this case is simply this: whether, in enacting the ACCA, Congress intended to enhance the prison terms of defendants with three felony drunk driving convictions who subsequently violate the law forbidding felons from possessing firearms.

---

[6]McCall's criminal history category was V and his offense level was 12, which reflects a two-level reduction because McCall accepted responsibility for his offense. See U.S.S.G. § 3E1.1.

Congress expressly defined"violent felony" in the ACCA as follows:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).  This case requires us to decide whether the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another"—known as the "otherwise involves" provision of the ACCA—includes felony drunk driving convictions.

When interpreting a statute, our court's objective is to give effect to the intent of Congress.  Watson v. Ray, 192 F.3d 1153, 1155-56 (8th Cir. 1999).  The first principle of statutory construction requires us to determine whether congressional intent is clear from the plain meaning of the statute.  Shelton v. Consumer Prods. Safety Comm'n, 277 F.3d 998, 1004 (8th Cir. 2002).  The Supreme Court has emphasized that, "[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988).  In this process, courts "'consider not only the bare meaning of the critical word or phrase'" at issue, "'but also its placement and purpose in the statutory scheme.'"  Holloway v. United States, 526 U.S. 1, 6 (1999) (quoting Bailey v. United States, 516 U.S. 137, 145 (1995)).  Accordingly, in evaluating § 924(e)(2)(B)(ii), we cannot

consider only the "bare meaning" of the "otherwise involves" provision. Rather, we must consider the provision in light of the "language and design of the statute as a whole." K Mart Corp., 486 U.S. at 291.

Subsection (B)(i), the first subsection in the definition of "violent felony," is straightforward, directing us to determine whether the elements of the crime in question involve the use, attempted use, or threatened use of physical force against another person—thus encompassing a wide swath of crimes with elements that expressly involve the use or potential use of physical force against people.

The wording of subsection (B)(ii) is less clear. The subsection has two operative clauses. The first operative clause contains an enumerated list of crimes, each of which "is" a violent felony. Given the express enumeration of four crimes and the use of the word "is," this part of (B)(ii) plainly indicates that Congress intended to include the crimes of burglary, arson, extortion, and those involving the use of explosives in the definition of "violent felony."[7]

The second operative clause of subsection (B)(ii)—the "otherwise involves" provision—is not so easily parsed. The statute's grammatical structure requires us to carry over language from the beginning of the definition in order to make sense of the subsection's locution. Thus, a violent felony is any crime punishable by more than a year in prison that "is burglary, arson, or extortion, involves use of explosives, or

---

[7]However, even this clearly enumerated list has caused interpretive problems, as it is not clear from the statute's language whether Congress intended to define the enumerated crimes according to the common law, the model penal code, or the label given to crimes in state statutes. The United States Supreme Court settled this issue in Taylor v. United States, 495 U.S. 575 (1990). In Taylor, the Court stated that "burglary," as used in § 924(e), "must have some uniform definition independent of the labels employed by the various States' criminal codes." Id. at 592. The Court then concluded Congress "meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." Id. at 598.

-14-

otherwise involves conduct that presents a serious potential risk of physical injury to another." As noted above, in determining the crimes Congress intended to encompass in the "otherwise involves" provision, we cannot look at the language of the provision in isolation. Rather, the Supreme Court has stressed "over and over" that "'in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" U.S. Nat. Bank of Ore. v. Indep. Ins. Agents of America, Inc., 508 U.S. 439, 455 (1993) (quoting United States v. Heirs of Boisdoré, 8 How. 113, 122 (1849)). As the Court has said, "[s]tatutory construction is 'a holistic endeavor,' and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." Id. (quoting United Savings Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988)). Given these established rules of statutory construction, in evaluating whether congressional intent is clear from the plain meaning of subsection (B)(ii), the "otherwise involves" provision must first be read in the context of the other language in subsection (B)(ii) and then in the context of the statute as a whole.

When the "otherwise involves" provision is read in the context of the list of enumerated crimes in (B)(ii), the provision gives rise to more than one reasonable interpretation. On the one hand, it is possible to extrapolate from the subsection's language that a violent felony is any crime—regardless of its nature—that involves conduct that presents a serious potential risk of physical injury to another.[8] However, this is merely one inference that can be drawn from the subsection's tortured locution. An equally reasonable inference is that Congress enumerated four specific property crimes prior to the "otherwise involves" provision because it intended the subsection to encompass serious property crimes similar in nature to the enumerated crimes.[9]

---

[8]For the sake of convenience, this will be referred to as the "all crimes" interpretation.

[9]This will be referred to as the "similar crimes" interpretation.

In discerning the intent of Congress, the word "otherwise" in subsection (B)(ii) poses particular interpretive difficulties. If Congress intended the "otherwise involves" provision to include all crimes, rather than only a subset of crimes similar to the enumerated crimes, the word "or" alone would have achieved this end more clearly. That is, Congress could have stated "is [one of the enumerated crimes], or involves conduct . . . ." Thus, under the "all crimes" interpretation, the word "otherwise" adds nothing to the meaning of the provision. This violates the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." United States v. Nordic Vill., Inc., 503 U.S. 30, 36 (1992). If "otherwise" is assumed to have some purpose in the statute, turning to the dictionary to confirm the term's plain meaning is of little avail. When used as an adverb, "otherwise," means (1) "in a different way or manner"; (2) "in different circumstances"; and (3) "in other respects." Webster's Ninth New Collegiate Dictionary 835 (1984). Depending on which definition of "otherwise" one chooses to apply, and which elements of the chosen definition one emphasizes, the "otherwise involves" provision can be read to support both the "any crimes" and "similar crimes" interpretations.

We have stated a statute is clear and unambiguous when "it is not possible to construe it in more than one reasonable manner." Breedlove v. Earthgrains Baking Cos., 140 F.3d 797, 799 (8th Cir. 1998); see also Chickasaw Nation v. United States, 534 U.S. 84, 90 (2001) (stating a statute is ambiguous if it is "capable of being understood in two or more possible senses or ways"). Simply put, the strange wording of § 924(e)(2)(B)(ii) gives rise to more than one reasonable interpretation of Congress's intent. Accordingly, it contravenes basic principles of statutory construction to assert that subsection (B)(ii) "plainly" includes all crimes involving conduct that poses a serious potential risk of physical injury to another. In fact, the only plainly apparent quality in subsection (B)(ii) is its ambiguity.

The ambiguity of subsection (B)(ii) is amplified if we consider the subsection in relation to the overall structure of the definition of "violent felony" in

-16-

§ 924(e)(2)(B). When it defined "violent felony," Congress set forth *two* subsections establishing the scope of the term. Subsection (B)(i) includes crimes with elements related to the use of physical force against another person. Subsection (B)(ii) enumerates four specific property crimes, followed by the "otherwise involves" provision. This deliberate, two-part structure cannot be easily reconciled with the proposition that Congress plainly intended the "otherwise involves" provision to include all crimes—regardless of their nature—that involve conduct that presents a serious potential risk of physical injury to another. Such a view requires the conclusion that Congress deliberately created a subsection delineating crimes against people, then deliberately created a subsection that enumerated four serious crimes against property that pose a risk of injury to people, and *then* included an all-encompassing "otherwise involves" provision that subsumes most of the crimes already defined in each subsection.

That is, if the "otherwise involves" provision is interpreted to include all crimes that involve conduct that presents a serious potential risk of physical injury to another, that definition encompasses all of the non-threat crimes against people that fall under (B)(i) as well as three of the four specific crimes set forth in(B)(ii)—i.e., burglary, arson, and crimes involving explosives.[10] Thus, not only is the specific language of subsection (B)(ii) ambiguous, that ambiguity is reinforced by the fact that Congress defined "violent felony" in two parts. This two-part structure neatly echos the structure of the original ACCA, which designated only the crimes of robbery and burglary for enhancement purposes. See discussion infra Part III.B. Accordingly, the deliberate structure of the definition of "violent felony" in subsections (B)(i) and (B)(ii) cannot be reconciled with the proposition that Congress "plainly" intended the "otherwise involves" provision to be all-encompassing. See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not,

---

[10]It also subsumes many forms of the fourth enumerated crime—extortion—which, depending on the circumstances, often creates the serious potential risk of physical harm to another.

depends on context."); United States v. Witkovich, 353 U.S. 194, 200 (1957) (acknowledging courts interpret a statutory provision to harmonize with surrounding provisions).

## III.

If the language of a statute is ambiguous or its meaning is doubtful, courts must consider the "purpose, the subject matter and the condition of affairs which led" to the statute's enactment. Lambur v. Yates, 148 F.2d 137, 139 (8th Cir. 1945). "When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law." Haley v. Retsinas, 138 F.3d 1245, 1249 (8th Cir. 1998) (quotation and citation omitted).

In resolving whether Congress intended subsection (B)(ii) to encompass "all crimes" or only crimes similar to the enumerated crimes, we have three primary tools at our disposal. First, we can apply established canons of construction to the statutory text itself. Second, we can examine the legislative history of the ACCA to ascertain the purposes of the Act. Third, we can draw from the Supreme Court's discussion of the Act in Taylor, supra, as well as the Supreme Court's statements about the ACCA in Leocal v. Ashcroft, 543 U.S. 1 (2004), for guidance in understanding the Act's purpose.

### A.        Canons of Construction

Because subsection (B)(ii) is ambiguous, we apply established canons of construction to the text to determine congressional intent. Subsection (B)(ii) begins with a list of four enumerated crimes, followed by the general "otherwise involves" provision. When general words are appended to an enumeration of more specific items, the "sensible and long-established" maxim of *ejusdem generis* "limits the way we should understand such general words." Holder v. Hall, 512 U.S. 874, 917 (1994). "The principle of *ejusdem generis* suggests that such general terms should be

-18-

understood to refer to items belonging to the same class that is defined by the more specific terms in the list." Id.; see also Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 384 (2003) ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.") (citation and quotation omitted). Here, Congress enumerated four crimes against property and attached this list to the general phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another." Under the principle of *ejusdem generis*, the general words in the "otherwise involves" provision should be construed "to embrace only subjects similar in nature" to the enumerated crimes. Washington State Dep't of Soc & Health Servs., 537 U.S. at 384. Therefore, the "otherwise involves" provision should not be interpreted to encompass all crimes—regardless of their nature—that involve the specified conduct. Rather, the provision should be interpreted to encompass only serious property crimes that are similar in nature to burglary, arson, extortion, and those involving the use of explosives.

B. Legislative History

The conclusion that Congress intended the "otherwise involves" provision to include only crimes similar in nature to the enumerated property crimes is reinforced by the legislative history of the ACCA.[11] When it enacted the 1984 Armed Career Criminal Act,[12] Congress provided that a convicted felon in possession of a firearm who had three previous convictions for "robbery or burglary" faced a mandatory minimum prison sentence of 15 years. The 1984 Act was amended in 1986 by the

---

[11]A full statement of the ACCA's legislative history can be found in Taylor, 495 U.S. at 581-83.

[12]Pub. L. 98-473, ch. 18, 98 Stat. 2185, 18 U.S.C. App. § 1202(a) (1982 ed., Supp. III) (repealed in 1986 by Pub. L. 99-308, § 104(b), 100 Stat. 459).

Firearms Owners' Protection Act,[13] then five months later by the Career Criminal Amendments Act of 1986 (CCAA of 1986).[14] The CCAA of 1986 effected two central changes. First, Congress changed the predicate offenses triggering enhancement from "burglary and robbery" to "a violent felony or serious drug offense." Congress then added subsections (B)(i) and (B)(ii), defining "violent felony."

As our court observed in United States v. Walker, 393 F.3d 819, 824 (8th Cir. 2005), the legislative history of the CCAA of 1986 expressly reinforces the conclusion that Congress intended the "otherwise involves" provision to encompass crimes similar in nature to the enumerated crimes. In deciding how "violent felony" should be defined, Congress agreed that the categories of crimes against people in (B)(i) should be included. The congressional debate that took place "centered upon whether *any property crimes* should be included as predicate offenses, and if so, which ones." Taylor, 495 U.S. at 589 (emphasis added). The compromise bill presented by the Subcommittee provided that

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—
>
> > (i) has as an element the use, attempted use, or threatened use of force against the person of another; or
> >
> > (ii) involves conduct that presents a serious potential risk of physical injury to another.

H.R. 4885. The Report of the House Committee on the Judiciary ("Report") favorably reported on this compromise bill, explaining:

---

[13]Pub. L. 99-308, § 104, 100 Stat. 458. This act recodified § 1202 as 18 U.S.C. § 924(e).

[14]Section 1402 of Subtitle I of the Anti-Drug Abuse Act of 1986, Pub. L. 99-570, 100 Stat. 3207-40.

The Subcommittee on Crime held a hearing . . . to consider whether it should expand the predicate offenses (robbery and burglary) in existing law in order to add to its effectiveness. At this hearing a consensus developed in support of an expansion of the predicate offenses to include serious drug trafficking offenses . . . and violent felonies, generally. This concept was encompassed in H.R. 4885 by deleting the specific predicate offenses for robbery and burglary and adding as predicate offenses State and Federal laws for which a maximum term of imprisonment of 10 years or more is prescribed for manufacturing, distributing or possessing with intent to manufacture or distribute controlled substances and violent felonies under Federal or State law if the offense has an element the use, attempted use or threatened use of physical force against a person. This latter provision would include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc.

The other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of "violent" felony. The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives *and similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person.

H.R. Rep. No. 99-849, at 3 (1986) (second emphasis added). Later, the Report summarized its conclusions, stating "[s]ubsection 2(b)(B)(ii) adds all State and Federal felonies against property such as burglary, arson, extortion, use of explosives *and similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person." Id. at 5 (emphasis added). The repeated reference to "similar crimes" in the Report reinforces the view that Congress intended the "otherwise involves" provision to encompass property crimes that are similar in nature to burglary, arson, extortion, and crimes that involve the use of explosives.

Before the CCAA of 1986 was finally enacted, the compromise version of subsection (B)(ii) was amended to read: "is burglary, arson, or extortion, involves use

-21-

of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." In <u>Taylor</u>, the Supreme Court explained the addition of the enumerated crimes to subsection (B)(ii), stating the compromise bill "apparently was intended to include burglary, among other serious property offenses, by implication, as a crime that 'involves conduct that presents a serious potential risk of physical injury to another.'" 495 U.S. at 589. The Court then noted that the enumerated crimes were added to the subsection "simply to make explicit the provision's implied coverage of crimes such as burglary." <u>Id.</u> This indicates the Court founded its analysis of (B)(ii) on the assumption that Congress intended to limit the subsection to "serious property offenses." <u>Id.</u> Thus, the enumerated crimes were added to the compromise bill to assure that burglary, arson, extortion, and use of explosives would be treated as "serious property crimes" for enhancement purposes. The Court's express statement in <u>Taylor</u> that (B)(ii) was intended to encompass "serious property crimes" cannot be reconciled with the proposition that Congress intended (B)(ii) to encompass all crimes—regardless of their nature—that involve conduct that presents a serious potential risk of injury to another. Such a proposition requires the assumption that, after defining an all-encompassing category, Congress added the enumerated crimes merely to articulate a random subclass of enhancement crimes.

The conclusion that the Court in <u>Taylor</u> interpreted subsection (B)(ii) as limited to "serious property offenses" is supported by the Court's express statements regarding Congress's intent in enacting the ACCA. In reviewing the legislative history of the ACCA, the Court in <u>Taylor</u> stated that a number of "useful observations" could be drawn from the legislative history. <u>Id.</u> at 587. First, the Court observed that

> throughout the history of the enhancement provision, Congress focused its efforts on career offenders—those who commit a large number of fairly serious crimes as their means of livelihood, and who, because they possess weapons, present at least a potential threat of harm to persons.

-22-

Id. at 587-88.  The Court further noted that, in defining predicate offenses under the ACCA, Congress intended to "capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders."  Id. at 590.  As the Court pointed out, in enacting the ACCA, Congress was "immersed in the intensely practical concerns of controlling violent crime."  Id. at 594.

Thus, the Court expressly acknowledged in Taylor that the ACCA is meant to enhance the prison sentences of career criminals who commit violent crimes "as their means of livelihood."  The Court recognized that a causal nexus exists between dangerous career criminals and subsequent gun possession—and that when both factors are present, a serious potential risk of injury to others results.  That is, the ACCA is premised on the notion that a defendant with a history of violent crime is more dangerous to society when he possesses a gun.  Thus, if a defendant's previous felonies have been "violent," the defendant is made particularly dangerous by possessing a gun—and enhancement under the ACCA is in order.  When, however, the defendant's previous conduct does not indicate he poses an elevated risk of injury to others by possessing a gun, enhancement makes no sense.  Rather, in those cases the defendant who has violated the prohibition against possessing guns should be sentenced under the Guidelines in accordance with his criminal history category and offense level.

## C. Leocal and Doe

The conclusion that Congress did not intend subsection (B)(ii) to encompass felony drunk driving laws is supported by statements in United States v. Doe, 960 F.2d 221 (1st Cir. 1992), and Leocal v. Ashcroft, 543 U.S. 1, 125 S. Ct. 377 (2004).  In Leocal, the Supreme Court interpreted 18 U.S.C. § 16(b), which defines a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Leocal, 543 U.S. at __, 125 S. Ct. at

381. The Court noted this definition of "crime of violence" is much more specific than the definition of "crime of violence" in U.S.S.G. § 4B1.2—a provision that is viewed as essentially interchangeable with the definition of "violent felony" in § 924(e)(2)(B). United States v. Nolan, 397 F.3d 665, 666 (8th Cir. 2005); see also United States v. Kelly, 422 F.3d 889, 894 n.2 (9th Cir. 2005); United States v. Montgomery, 402 F.3d 482, 488 n.28 (5th Cir. 2005); United States v. Johnson, 246 F.3d 330, 333 n.5 (4th Cir. 2001); United States v. Arnold, 58 F.3d 1117, 1121 (6th Cir. 1995).

When comparing § 16(b) with § 4B1.2, the Court in Leocal stated that "§ 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct." Id. at ___, 125 S. Ct. at 383 n.7. This statement could be construed to mean that the Court is predisposed to concluding that § 4B1.2 (and thus § 924(e)) *does* include "all offenses" that create a substantial risk injury will result from one's conduct. However, the Court went on to state that "[t]he ordinary meaning of [crime of violence] . . . suggests a category of violent, active crimes *that cannot be said naturally to include DUI offenses*." Id. at __, 125 S. Ct. at 383 (emphasis added). The Court then favorably quoted then-Chief Judge Breyer's statement in Doe that the term "violent felony" in 18 U.S.C. § 924(e) "'calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.'" Id. (quoting Doe, 960 F.2d at 225).[15] This favorable citation of Doe in Leocal supports the proposition that a "crime of violence" under § 4B1.2—and therefore a "violent felony" under § 924(e)—does not include drunk driving. At the very least, the tension between the Court's initial observation that § 16(b) and § 4B1.2

---

[15]In discussing § 924(e), the First Circuit noted in Doe that reading the statute broadly would "bring within the statute's host a number of other crimes that do not seem to belong there." 960 F.2d at 225. The First Circuit went on to say that "[t]here is no reason to believe that Congress meant to enhance sentences based on, say, proof of drunken driving convictions. Rather, we must read the definition in light of the term to be defined, 'violent felony,' which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." Id.

encompass different conduct and its subsequent observation, citing <u>Doe</u>, that actively violent crimes must be distinguished from "accidental or negligent conduct" underscores the unsettled nature of whether Congress intended to include felony drunk driving convictions in the category of violent felonies as defined in § 924(e). Thus, although neither <u>Doe</u> nor <u>Leocal</u> provide direct support for the conclusion that drunk driving is not a violent felony under § 924, <u>Leocal</u>'s discussion of § 924(e) indicates that the Court believes drunk driving is not an actively violent crime, as required under the ACCA.

V.

There is no question that drunk driving has destructive consequences and that state legislatures and Congress have a duty to enact laws that facilitate the identification, conviction, and punishment of drunk drivers. The issue at hand, however, is not how drunk driving should be punished. Nor is the issue whether felons should be punished in accordance with the Guidelines for illegally possessing guns. The issue is whether Congress intended to include drunk driving convictions in the category of "violent felonies" as defined in the ACCA. Congress enacted the ACCA to lengthen the sentences of career offenders "who commit a large number of fairly serious crimes as their means of livelihood, and who, because they possess weapons, present at least a potential threat of harm to persons." <u>Taylor</u>, 495 U.S. at 587-88. It bears repeating that the ACCA is an *enhancement* statute triggered by gun possession. In imposing mandatory minimum sentences on these defendants, Congress has recognized society's interest in enhancing the sentences of violent career criminals whose dangerousness is intensified by gun possession. Although a repeat drunk driver poses a threat to society, that threat is not intensified by the possession of a gun. Rather, a drunk driver's threat to society is intensified by his or her choice to drink and drive again. While state legislatures and Congress are free to fashion sentencing remedies to address the threat repeat drunk drivers pose to society, it only makes sense to have those remedies triggered by the dangerous conduct in question: drunk driving.

Because the wording of § 924(e) gives rise to reasonable questions regarding whether Congress intended to include drunk driving as an enhancing crime under the ACCA, rather than expanding the scope of the statute, our court should apply the principle of lenity and construe the statute in favor of the defendant. "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Rewis v. United States, 401 U.S. 808, 812 (1971). Courts should not "interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." Ladner v. United States, 358 U.S. 169, 178 (1958). In the case at hand, after pleading guilty to possessing a gun in violation of § 922(g)(1), McCall's prison sentence was increased nearly six-fold, from 27-to-33 months to a mandatory minimum of 15-years. Absent clear direction from Congress, we should avoid construing the ACCA in a manner that imposes such a dire penalty on a criminal defendant. Instead, we should construe the statute at issue in McCall's favor, recognizing that the legislative history of the ACCA indicates that Congress did not intend to include felony convictions for drunk driving in the "otherwise involves" provision. If Congress disagrees, the statute can be amended to alleviate any question regarding Congress's intent. This case should be remanded, and McCall should be resentenced without an enhancement under the ACCA.

———————————————